## PORTABLE DRILLING CORP. v. GUINN et ux.

No. 33826. Dec. 19, 1950.

Rehearing Denied Jan. 23, 1951.

*226 P. 2d 923.*

F. A. Bodovitz, Tulsa, for plaintiff in error.

John L. Goode and Mark Goode, Shawnee, for defendants in error.

ARNOLD, V.C.J. Action by W. S. and Viola R. Guinn, husband and wife, against Portable Drilling Corporation, a corporation, for damages to land and crops by reason of alleged pollution.

In their petition plaintiffs alleged four causes of action but demurrers were sustained to the third and fourth so that only the first and second are involved here. By their first cause of action plaintiffs alleged in substance that salt water and other deleterious substances from defendant's leasehold had destroyed trees, vegetation, and grass growing on each side of the creek on plaintiffs' land by spreading out over the land of plaintiffs during overflow. In their second cause of action plaintiffs alleged that defendant permitted the salt water and other deleterious substances from its oil well to flow down and into the creek on plaintiffs' land from which it overflowed

onto his southeast 40 acres damaging a crop of oats growing thereon to the extent of $240.

Defendant answered admitting its ownership of the leasehold estate adjacent to plaintiffs' land and that it had a producing well thereon. It denied that any salt water had been permitted to flow from its well onto the land of plaintiffs; that any act or omission on its part had resulted in damage to plaintiffs; that the oat crop on plaintiffs' land was damaged as alleged in their petition; and alleged that plaintiffs grew and harvested the oat crop claimed by them to have been partially destroyed; that all damage to plaintiffs' land, if any, was done long prior to plaintiffs' acquisition of the land.

Separate verdicts were returned by the jury as to damages to the surface of the land and damages to the crop of oats in the respective amounts of $200 and $150. Judgment was entered accordingly.

Plaintiffs' evidence shows that they purchased the surface to 80 acres of land in Pottawatomie county in November, 1945; that defendant had for many years operated an oil and gas well on adjacent land which produced salt water and other deleterious substances which were permitted to flow out upon the surface of defendant's leasehold and into a ravine through which it was carried into another ravine which crossed plaintiffs' land; that on two different occasions in 1947 salt water and other deleterious substances were by overflow from said ravine spread onto and over some of the land of plaintiffs, permanently damaging the surface thereof and growing crops thereon; that there was no other source of pollution at that time; that the number of acres damaged by said pollution was six to ten acres; that the reasonable cash market value of the land so damaged was $100 per acre before the overflow and pollution and $75 per acre thereafter; that the oat crop growing thereon would, except for the pol-

lution, have produced 40 bushels per acre; that the amount produced was 135 bushels on the entire 12-acre tract sowed to oats; that the market value thereof was $1 per bushel, and the cost of producing and harvesting the crop was proven.

Defendant offered evidence to show that no damage resulted from the overflow testified to by plaintiffs; that the land of plaintiffs was permanently damaged by salt water from wells operated on the land now owned by plaintiffs which had been plugged eight or ten years prior to plaintiffs' purchase; that a good crop of corn was grown on the lands here involved in 1944; that plaintiffs produced a better crop of oats on the land claimed to have been damaged the year of the pollution than they produced on it the year before; and that at the time of the trial plaintiffs had a good stand of alfalfa on the damaged land; and that the crop of oats produced by plaintiffs in 1947 was as good as that produced on near-by land.

After unsuccessful motion for new trial, defendant appeals and relies for reversal of the judgment on the four propositions hereinafter stated and discussed:

"(1) The damage to the oat crop growing on the land permanently damaged is merged into the general damage to the land."

Permanent damage to land and damage to growing crops are entirely different elements of damage though caused by the same thing and both may be recovered in the same action. Where both are sought in the same action damage to growing crops is not by operation of law merged into the permanent damage sought. One is permanent damage, the other a temporary one, and they must be proven in a different manner. We said in Oklahoma City v. Page, 153 Okla. 285, 6 P. 2d 1033:

"In an action for nuisance which is temporary as a matter of law, it is not error to refuse to require the plain-

tiff to elect whether to claim 'temporary damages' or 'permanent damages', because there may be several effects caused by the nuisance, one or more of which would be temporary and would cease upon abatement of the nuisance, and one or more of which would be permanent regardless of the abatement of the nuisance, and a plaintiff would be entitled to recover full compensation for the wrong, recovering for such temporary effects as could be proved and for such permanent effects as could be proved."

See, also, Gripe v. Hatmaker, 189 Okla. 317, 116 P. 2d 973; 15 Am. Jur., Crops, §§76-78, and Damages, §§108, 109.

Proof of permanent damage to land, that is, the fair cash market value before and immediately after the damage, does not, unless otherwise shown, include the value of growing crops. Here the record does not show the inclusion of growing crops in the opinion evidence as to the permanent damage to the land. The two elements of damage were proven in the accepted and established manner of which no complaint is made. Gripe v. Hatmaker, supra. There was no merger and therefore no double damages were awarded.

"(2) The verdict of the jury is based upon speculation, surmise and conjecture, all to the defendant's prejudice."

One of the witnesses who testified as to the permanent damage said that six to eight acres were damaged by the salt water. Another estimated the number of damaged acres at eight to ten. It is urged under the foregoing proposition that the determination of the jury that eight acres were permanently damaged was based on speculation, surmise and conjecture. Admittedly a determination by the jury that six acres had been damaged would not have been based on speculation because all witnesses on the point testified that at least that many acres had been damaged. At least one witness testified that eight to ten acres were permanently damaged. The jury must have believed the witness who estimated the number

of damaged acres at eight to ten. We see no "speculation, surmise or conjecture" in this.

"(3) Plaintiffs' land was permanently damaged many years prior to their acquiring the same, if pollution from salt water, oil, b.s., and other substances from oil wells can permanently damage land."

Under this proposition defendant urges that the testimony shows that the land in question was polluted and sustained the damage now claimed, if any, before plaintiffs purchased the land. The testimony of the defendant and plaintiffs on this point is in conflict. That conflict in the testimony was resolved by the jury in favor of plaintiffs, whose testimony reasonably tended to show that the damages which they sought flowed directly and exclusively from overflows from salt water from the premises of defendant which overflowed onto their land in 1947. See H. F. Wilcox Oil & Gas Co. v. Murphy, 186 Okla. 188, 97 P. 2d 85; Oklahoma City v. Page, 153 Okla. 285, 6 P. 2d 1033.

"(4) The oral amendment to plaintiffs' petition, after the evidence for each party had been introduced, changed substantially their claim, as well as the defense thereto."

Plaintiffs' petition alleged permanent damage to their land by reason of the destruction of trees along the banks of the ravine by salt water. No other permanent damage was alleged. No proof was made of such damage, but, as hereinbefore indicated, proof of permanent damage was made to six to ten acres on which the oat crop was growing. After all the evidence had been introduced by plaintiffs and defendant, motion for judgment and directed verdict was made by defendant on the ground that no evidence had been introduced showing trees had been destroyed or damaged. The court overruled the motion and remarked that the question of permanent damage by reason of destruction of trees would not be submitted but that the question of damage to eight to ten acres of land

constituting the oats ground would be submitted. The defendant excepted to this order of the court and moved for a directed verdict in its favor on the second cause of action which was also overruled. Thereupon request was made by plaintiffs to amend the petition in respect to permanent damage to the land. Objection was made but plaintiff was given leave to so amend. Defendant then asked the court to enter an order declaring a mistrial, which was overruled and exception taken. The testimony describing and locating the damaged area of the land and the testimony as to the permanent damage thereto was not objected to. The defendant, however, did object to the competency of the witnesses to testify as to the extent and nature of the damage. Their competency is not questioned here. By permitting the testimony as to the nature and extent of the permanent damage to go in without objection on the ground that it was not within the issues, it waived any right it may have otherwise had to object to amendment of the petition to conform to the proof on the matter.

Then, too, defendant alleged and produced testimony to show, and now contends it did show, that no damage occurred by reason of the overflows of salt water on plaintiffs' land. Its proof of previous pollution and that no damage occurred by reason of pollution subsequent to the purchase by plaintiffs went to the issue of pollution and damage of the few acres in question. The defendant was not surprised by the proof as to permanent damage nor the permission of the court to amend. The court did not abuse its discretion in permitting the amendment to be made and submitting the question of permanent damage to the jury. 12 O.S.A. §317.

Affirmed.