WELLSVILLE OIL CO. v. CARVER.

No. 34800.   March 18, 1952.

*242 P. 2d 151.*

182

Pierce, Rucker, Mock, Tabor & Duncan, Tulsa, and John Pendleton, Nowata, for plaintiff in error.

Kight & Brainard, Claremore, for defendant in error.

BINGAMAN, J. This is an action for damages for injuries to and loss of cattle, brought by plaintiff, Roy Carver, against the defendant, Wellsville Oil Company, a corporation. The damages to the cattle were occasioned by their drinking oil and oil refuse from slush pits and ditches and from a small branch into which it is alleged oil was permitted to escape. The cattle were in a pasture rented by plaintiff and operated as an oil and gas lease by defendant. The cause was tried to a jury which returned a verdict for plaintiff, and defendant appeals.

Defendant contends that the trial court erred in refusing to give to the jury its requested instruction No. 2, and in giving to the jury instruction No. 4. We think this contention must be sustained.

From the evidence it appears that at the time plaintiff first rented the land for a pasture it was being operated by defendant under a prior oil and gas lease. Plaintiff testified that the slush pits and ditches leading from the wells to them were open and unfenced, although a large salt water tank was fenced. He further testified that although he had used the pasture for several years he had had no trouble occasioned by cattle drinking oil or other deleterious substances until August, 1949, when he lost some eight cows and three calves, and others sustained injury from drinking these poisonous substances. From his testimony it appears that most, if not all of the cattle which died, died from the effects of drinking oil from an open slush pit and a ditch leading from the well to the pit; that at the time the tubing was pulled from the well the oil in the tubing flowed through the ditch into the slush pit. He also testified that there was a small dry weather branch on the property in which small pools of rain water accumulated; that a leak in an oil line running across said branch permitted escaping oil to cover the surface of some of these pools, and that his cattle were injured as a result of drinking this oily water. There is some evidence to the effect that this small branch, the width and depth of which is not shown, and which was sometimes referred to as a ditch, had been dammed by defendant and was used as a ditch and slush pit, but the evidence is not clear on this point. Much of the testimony, especially that of plaintiff, was given by referring to a plat or sketch which was not introduced in evidence, the witness testifying that the branch went "this way," indicating on the sketch, and that wells and slush pits were located at points pointed out by him. It appears that there was a large fresh water pond on the place, and a creek which ran into it, but the exact location of this pond and creek, with reference to the small branch referred to, and whether the small branch entered the creek above or below the pond, is not clear. The evidence produced by defendants tended to contradict to some extent that produced by plaintiff. Defendant contended that it was not required to fence its slush pits and ditches and that any damages resulting to plaintiff by reason of his cattle drinking therefrom were due to his own negligence.

Defendant, in its instruction No. 2, requested the court to instruct the jury that it had exclusive right to the possession and use of so much of the land as was required for the digging of slush pits and ditches thereon for the purpose of transporting salt water and refuse oil to such pits, and was under

no duty to fence the same, and that if the cattle of plaintiff had access thereto they were trespassing, and the only duty owed plaintiff with respect to them was to not intentionally or willfully injure them. This instruction was refused and no similar instruction was given by the trial court.

By its instruction No. 4, the trial court instructed the jury as follows:

"You are instructed that it is the duty of the owners of oil mining leases in the operation thereof to construct fences around ponds or tanks used by them for the purpose of storing salt water; and it is their further duty to empound other refuse from oil wells within said ponds or tanks. And it is a violation of the law of this state for operators of oil mining leases to permit oil to escape therefrom and flow over the surface of the earth into fresh water streams from which stock are accustomed to drink, or to permit oil or other poisonous substances to escape from their oil mining operations and flow over the surface of the earth into ravines or holes, thereby exposing said liquid to the use of cattle or other livestock being pastured upon said premises. And in this connection, you are told that if you find from a fair preponderance of the evidence, facts and circumstances in proof that the defendant herein, in the operation of their oil mining lease, permitted oil or other poisonous substances to escape therefrom and flow over the surface of the earth into a ravine within the plaintiff's pasture and that said oil or other poisonous substances were permitted to stand in pools within said pasture, or that said oil or other poisonous substances eventually found its way into a fresh water stream from which the plaintiff's cattle drank, and that plaintiff's cattle did in fact drink therefrom and were injured as a proximate result thereof, then and under such circumstances your verdict should be in favor of the plaintiff in such amount as you find from the evidence, facts and circumstances in proof would fairly reimburse him for the injuries sustained, not to exceed in any event the amount claimed in plaintiff's petition."

By this instruction the jury was told that it was the duty of defendant to impound within fenced ponds or tanks all salt water or other refuse from the oil wells, and that it was a violation of the law of the state to permit the same to flow over the surface of the earth, or collect in pools within the said pasture. This instruction was plainly erroneous.

In Pure Oil Co. v. Gear, 183 Okla. 489, 83 P. 2d 389, we held that the provisions of 52 O. S. 1951 §296, imposed no duty or obligation upon an oil and gas lessee to fence slush pits or salt water pits, or the ditches leading from the wells to such pits; that the oil and gas lessee had the right to use a reasonable amount of the land covered by his lease for that purpose, and that the purpose of the statute was to prevent oil operators from allowing salt water and other deleterious substances to spread indiscriminately over the surface of the land; that said statute contemplated an escape from that part of the premises which the operator had a right to use to portions which he had no right to use under his oil and gas lease. The holding in that case has never been departed from by this court, and was followed and approved in the recent case of Mid-Continent Petroleum Co. v. Rhodes, 205 Okla. 651, 240 P. 2d 95. In that case we said:

"When the mineral rights in lands have been reserved prior to the lease of the lands for agricultural purposes, the holder of an oil mining lease owns a dominant estate in the land for purpose of exploring for oil, and possesses exclusive right to use so much of the leased premises as reasonably necessary to the operation of drilling for oil and said oil lessee owes no legal duty to lessee of surface to fence off tanks, machinery, etc., to prevent livestock from having access thereto; but oil lessee owes the duty to not intentionally, willfully, or wantonly injure livestock, and after discovery of their peril to use reasonable care to avoid injuring them."

Under these authorities it is clear that the trial court's instruction No. 4 imposed a duty upon the defendant over and above that required by the law, and that the giving of such instruction was reversible error. We think also that it was the duty of the trial court to have given to the jury plaintiff's requested instruction No. 2, or a similar instruction. This the court did not do.

Plaintiff contends that that portion in the instruction No. 2, requiring the defendant to fence its ditches and slush pits, or to confine the oil and other refuse from its well within fenced inclosures was surplusage, for the reason that his pleading alleged and his evidence showed that the injuries to and loss of his cattle was occasioned by their drinking from the pools in the small branch above mentioned. But, in his petition he alleges that the defendant negligently, wrongfully and unlawfully permitted crude oil and other poisonous substances to collect in an unfenced ditch and slush pits which were not fenced and to which the cattle of plaintiff had ready access, and that his cattle drank from the slush pits, creek, pits and pools the substances which caused their injury and death, and, as pointed out above, from his testimony it appears that the death of his cattle was largely, if not entirely, caused by their drinking from the slush pits and ditches leading thereto. In this the case is distinguishable from Texas v. Taylor, 178 Okla. 21, 61 P. 2d 574, cited and relied upon by plaintiff. In that case we pointed out that an instruction similar to instruction No. 4, given by the trial court, was not prejudicial to the defendant, for the reason that the entire theory upon which plaintiff in that case sought recovery was that the salt water was permitted to escape from the ponds and ditches constructed by defendant and flow over the surface of the land. Such was not the case here.

Reversed, with directions to grant a new trial.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, and O'NEAL, JJ., concur.