C. Sue DuLANEY, Elizabeth A. Harris, Citizens Against Land Misuse, Inc., an Oklahoma non-profit corporation, Rodger Most, and Alta McSpadden, Trustee of the M.R. McSpadden Trust, Appellees,

v.

The OKLAHOMA STATE DEPARTMENT OF HEALTH, the Oklahoma State Board of Health, and Six–Hart Services and Resources, Inc., an Oklahoma corporation, Appellants.

Nos. 70498, 70524.

Supreme Court of Oklahoma.

Sept. 21, 1993.

Rehearing Denied March 10, 1994.

Andrew T. Dalton, Jr., Tulsa, Elizabeth A. Harris, Claremore, for appellees.

Michael C. Wofford, Oklahoma City, for appellant, Oklahoma State Health Dept.

Roy D. Johnsen, James D. Goodpaster, Tulsa, Jack K. Mayberry, Claremore, for appellant, Six–Hart Services and Resources, Inc.

KAUGER, Justice.

The single issue presented is whether, when a party applies for a permit·to

operate a solid waste disposal site pursuant to 63 O.S.Supp.1983 § 2258.2,[1] adjacent land-owners and mineral interest owners are entitled to notice and an opportunity to be heard.[2] We find that adjacent landowners and mineral interest owners are entitled to notice and an opportunity to be heard in an individual proceeding conducted pursuant to 75 O.S.1981 § 309 [3] before a landfill permit issues. The Legislature effectively obliterated *Stewart v. Rood,* 796 P.2d 321, 333–335 (Okla.1990) and *Sharp v. 251st St. Landfill,* 810 P.2d 1270, 1273 (Okla.1991) with the enactment of 63 O.S.1991 § 1–2415. However, because the instant cause arose before the effective date of the amendment, *Stewart* and *Sharp* are hereby overruled to the extent that they hold that adjacent landowners have

**1.** The instant cause was initiated in June, 1987. At that time, the operative statute was 63 O.S.Supp.1983 § 2258.2 providing:

"An applicant for a permit for a new disposal site, upon the filing of the application with the Department, shall give notice by one publication in two newspapers local to the proposed disposal site of opportunity to oppose the granting of such permit by requesting a formal public meeting. If within thirty (30) calendar days of the publication of such notice the Department receives from any person notice of opposition and request for a formal public meeting, it shall hold the same and allow opportunity for presentation of written and oral views. Such meetings may be held in the offices of the Oklahoma State Department of Health or at a location convenient to the proposed disposal site if requested in the written request for such meeting."

Section 2258.2 has been revised and amended. It now provides for precisely the relief sought in the district court. 63 O.S.1991 § 1–2415 provides in pertinent part:

"... B. Beginning September 1, 1990, and within thirty (30) days of the date the public meeting is held or within ninety (90) days of the publication of the notice of application if no public meeting is requested, any person who is a resident or owner of a business or land in the county of the proposed disposal site, or of an adjacent county, who may suffer environmental damage as a result of the construction and operation of the site, shall have the right to request and participate in a hearing as a party to an individual administrative proceeding on the permit. The permit applicant shall also be a party. Parties shall have the right to present evidence to show the Department, and the Department in making its decision will decide, whether the application meets the requirements of the Solid Waste Management Act and the regulations of the State Board of Health. The proceeding shall be conducted pursuant to the provisions of the Administrative Procedures Act.
C. The provisions of this section shall not affect any pending applications and any pending litigation related to the procedures by which the Department has issued permits before September 1, 1990."

**2.** The adjacent landowners and royalty interest owners alleged errors in the trial court which were not addressed by that tribunal. Because the trial court did not rule on these issues, we express no view on the claims. The adjacent landowners and royalty interest owners filed two motions to dismiss the appeal. Those motions are denied. The first motion argued that the trial court's order was not a final judgment. We disagree. A judgment declaring a permit invalid and holding applicable agency rules fatally flawed and insufficient to grant a permit is subject to our review. The second motion to dismiss questions the Commissioner of Health's authority to appeal the trial court's adverse ruling. Pursuant to 63 O.S.Supp.1987 § 1–106, the Commissioner of Health is given broad administrative duties to execute and enforce rules, regulations and standards adopted by the Board of Health. As the Department of Health's chief executive officer, the Commissioner has authority to issue permits under the Solid Waste Management Act. 63 O.S.1981 § 2260(5). [This duty now falls upon the Department of Health pursuant to 63 O.S.1991 § 1–2418(A)(5).] The Department of Health has the authority to issue the contested permit under the rules promulgated by the Board of Health. The Commissioner has standing to appeal.

**3.** Title 75 O.S.1981 § 309 provides in pertinent part:

"(a) In an individual proceeding, all parties shall be afforded an opportunity for hearing after reasonable notice.
(b) The notice shall include:
(1) a statement of the time, place and nature of the hearing;
(2) a statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) a reference to the particular sections of the statutes and rules involved; and
(4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.
(c) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved...."
Section 309 was amended effective July 1, 1992. The prior version of the statute is virtually identical to the 1992 amendment except that special provisions are made for access to evidence and the way in which oral proceedings may be recorded and preserved.

no constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue.

## RELEVANT FACTS

This action arises from the issuance of a landfill permit by the appellants, Oklahoma State Department of Health (Department of Health) and the Oklahoma State Board of Health (Board of Health) to the appellant, Six–Hart Services and Resources, Inc. (Six–Hart). The Department of Health issued a permit to Six–Hart after turning down the appellees', collectively referred to as the adjacent landowners' (C. Sue DuLaney, Elizabeth A. Harris, Citizens Against Land Misuse, Inc., and Rodger Most) and the mineral interest owners' (Alta McSpadden, trustee of the M.R. McSpadden Trust), request for an evidentiary hearing.

In June, 1987, the adjacent landowners and the mineral interest owners filed an action in district court against the Department of Health, the Board of Health, and Six–Hart. The action was brought pursuant to the declaratory judgment provision of the Oklahoma Administrative Procedures Act (Administrative Procedures Act), 75 O.S.Supp.1987 § 306.[4] The adjacent landowners and mineral interest owners sought a judgment declaring rules promulgated by the Board of Health and administered by the Department of Health invalid. The challenged rules were promulgated and passed under the authority of the Oklahoma Solid Waste Management Act (Solid Waste Management Act), 63 O.S.1981 § 2251 et seq. The rules were challenged for their failure to

include a trial-type hearing—individual proceeding—pursuant to 75 O.S.1981 § 309 prior to the issuance of a landfill permit.

All parties moved for summary judgment. In ruling for the adjacent landowners and for the mineral interest owners on their motion for summary judgment, the trial court found that the permit process was invalid. The finding was based on the failure of the Board of Health rules to identify the proper parties to contest the granting of a landfill permit in an individual proceeding conducted under the Administrative Procedures Act. The appeals of Six–Hart and the Department of Health have been consolidated for joint resolution. We note that the statute in effect at the time the challenge was lodged, 63 O.S.Supp.1983 § 2258.2,[5] did not provide for an individual proceeding to challenge the permit's issuance. The Legislature effectively obliterated *Stewart v. Rood*, 796 P.2d 321, 333–335 (Okla.1990) and *Sharp v. 251st St. Landfill*, 810 P.2d 1270, 1273 (Okla.1991) with the enactment of 63 O.S.1991 § 1–2415. The current statutory scheme specifically provides for a proceeding to be conducted pursuant to the Administrative Procedures Act in all proceedings begun after September 1, 1990.[6]

## ADJACENT LANDOWNERS AND MINERAL INTEREST OWNERS ARE ENTITLED TO NOTICE AND AN OPPORTUNITY TO BE HEARD IN AN INDIVIDUAL PROCEEDING CONDUCTED PURSUANT TO 75 O.S. 1981 § 309 BEFORE A LANDFILL PERMIT ISSUES.

The adjacent landowners and the mineral interest owners assert that their property

---

**4.** Title 75 O.S.Supp.1987 § 306 provides in pertinent part:

"A. The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff...."

**5.** Title 63 O.S.Supp.1983 § 2258.2 provides:

"An applicant for a permit for a new disposal site, upon the filing of the application with the Department, shall give notice by one publication in two newspapers local to the proposed

disposal site of opportunity to oppose the granting of such permit by requesting a formal public meeting. If within thirty (30) calendar days of the publication of such notice the Department receives from any person residing or doing business in Oklahoma written notice of opposition and request for a formal public meeting, it shall hold the same and allow opportunity for presentation of written and oral views. Such meetings may be held in the offices of the Oklahoma State Department of Health or at a location convenient to the proposed disposal site if requested in the written request for such meeting."

**6.** Title 63 O.S.1991 § 1–2415, see note 1, supra.

interests will be adversely affected by the issuance of a landfill permit to Six–Hart. The landowners present arguments based upon potential air pollution, odor, traffic and safety problems, groundwater pollution—including groundwater used by them and underlying their property—, and property devaluations. Their claims are also premised on a concern for the decline of the area's general aesthetics and environment. The royalty interest owners argue that issuance of the permit will interfere with the oil and gas rights owned directly under the proposed site and in the nearby property. Based upon the potential for interference with these property-oriented rights, the adjacent landowners and the royalty interest owners insist that they are entitled to notice and an opportunity to be heard through an individual proceeding conducted pursuant to 75 O.S.1981 § 309 [7] before a landfill permit issues.

The Department of Health and Six–Hart argue that neither a statutory nor a constitutional basis exists to support the holding of a due process individual proceeding. They rely upon *Stewart v. Rood*, 796 P.2d 321, 333–335 (Okla.1990) in which a sharply divided Court held that adjacent landowners have no constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue. We disagree and hereby overrule *Stewart v. Rood*, 796 P.2d 321, 333–335 (Okla.1990) and *Sharp v. 251st St. Landfill*, 810 P.2d 1270, 1273 (Okla.1991) to the extent that they hold that adjacent landowners have no constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue.

## A.

## MINERAL INTEREST OWNERS' RIGHT TO NOTICE AND AN OPPORTUNITY TO BE HEARD.

■ The permit granted by the Department of Health to Six–Hart pursuant to the Solid Waste Management Act authorized the use of 125 acres of land for a solid waste landfill. The mineral interest owners hold the oil and gas rights underlying the proposed landfill site.

■ The right to enter land to prospect for and to take oil and gas is an ownership right.[8] Mineral interest owners and lessees are entitled to conduct exploration. The authority to explore for oil and gas extends to the mineral interest owner's lessee. The right includes surface ingress and egress and the authority to occupy the surface to the extent reasonably necessary for exploring and marketing the oil and gas.[9] The interest is in the nature of a property right,[10] and the surface estate is servient to the dominant mineral estate for the purpose of oil and gas development.[11]

■ Minimum standards of due process require that administrative proceedings, which may directly and adversely affect legally protected interests, be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be heard.[12] A petroleum engineer testified that use of the surface as a landfill would create numerous problems for oil and gas exploration, development and recovery. The engineer enumerated a number of factors as potential problems. He indicated that: 1) the presence of the landfill would impair ingress and egress, and potentially increase operating hazards; 2) the production of methane gas—a byproduct of sanitary

**7.** Title 75 O.S.1981 § 309, see note 3, supra.

**8.** *Anschutz Corp. v. Sanders*, 734 P.2d 1290–91 (Okla.1987).

**9.** Id.; *Hinds v. Phillips Petroleum Co.*, 591 P.2d 697, 698–88 (Okla.1979).

**10.** *Turley v. Flag–Redfern Oil Co.*, 782 P.2d 130, 135 (Okla.1989); *Davis Oil Co. v. Cloud*, 766 P.2d 1347, 1349 (Okla.1986).

**11.** *Turley v. Flag–Redfern Oil Co.*, see note 10 at 135, supra.

**12.** *Harry R. Carlile Trust v. Cotton Petroleum*, 732 P.2d 438, 443 (Okla.1986), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987); *Cate v. Archon Oil Co.*, 695 P.2d 1352, 1356 (Okla.1985).

landfills—might impair the use of necessary exploration technology; 4) the landfill was an unstable surface for necessary direct drilling methods; and 5) the pollution of oil sand or underground water sources under the landfill site was possible from drilling activity taking place through the required clay liner. The potential for pollution of the underground water system was supported by evidence presented by a civil engineer with a specialty in hydrology.

■ The permit granted by the Department of Health allows the use of the surface estate in a manner which may impair recognized and well-defined property rights of the mineral interest owner. Due process requires that the mineral interest owner be given notice and an opportunity to contest the permit at the administrative level.[13] The due process clauses of the United States[14] and the Oklahoma[15] Constitutions provide that certain substantive rights—life, liberty and property—cannot be deprived except by constitutionally adequate procedures. Once it is determined that due process applies, the question becomes what process is due. Here, the inquiry is answered by 75 O.S.1981 § 314(a).[16] It provides for an individual proceeding conducted under the Administrative Procedures Act pursuant to 75 O.S.1981 § 309.[17]

## B.

## ADJACENT LANDOWNERS' RIGHT TO NOTICE AND AN OPPORTUNITY TO BE HEARD.

■ Rather than arguing the inapplicability of *Stewart v. Rood,* 796 P.2d 321, 333–335 (Okla.1990), the adjacent landowners attempt to distinguish it on the basis that issues presented by the instant cause were not discussed in the *Stewart* opinion. Because the questions referred to by the adjacent landowners were not addressed by the trial court, they will not be reviewed here.[18]

13. Id. It would be inequitable at best and ludicrous at least if we were not to extend due process protection to mineral interest owners, when the Legislature, even in light of the property rights of the mineral interest owner, has provided certain protections to the surface owner through the award of surface damages. See, 52 O.S.1991 § 318.3.

14. U.S. Const. amend. 14, § 1 provides in pertinent part:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

15. The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

16. Title 75 O.S.1981 § 314(a) provides:

"When the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this act concerning individual proceedings apply." Section 314(A) was amended effective July 1, 1992. It now provides:

"Except as otherwise specifically provided by law, the issuance or denial of a new license shall not require an individual proceeding." Because the necessity of notice and an opportunity for a hearing is based on constitutionally protected property rights, an individual proceeding would remain necessary under the 1992 amendment.

17. Title 75 O.S.1981 § 309, see note 3, supra. Six–Hart's argument that any constitutional right to be heard was satisfied by the public meeting held prior to the granting of the permit and the opportunity to provide supplemental information to the Department of Health is unpersuasive. Although the due process clause does not mandate inflexible procedures universally applicable to every imaginable situation, the due process clauses of both the federal and Oklahoma constitutions require at a minimum notice and a hearing prior to the issuance of the permit in the case of mineral interest owners. See, *Goss v. Lopez,* 419 U.S. 565, 578–79, 95 S.Ct. 729, 736–37, 42 L.Ed.2d 725, 737 (1975); *Short v. Kiamichi Area Vocational–Technical School Dist. No. 7,* 761 P.2d 472, 477–78 (Okla.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1341, 103 L.Ed.2d 811 (1989) and 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Only through such a hearing would the mineral interest owner be able to cross-examine the experts for the proponent of the permit to determine if all the substantive requirements of the Department of Health had been fulfilled.

18. Some of the landowners argued that their residences were within 500 yards of the permit site. Certain statutory rights are given to individuals having an occupied residence within 500 yards of a new landfill site by 63 O.S.Supp.1986 § 2258. Since the trial court's decision, § 2258 has been amended. It now appears at 63

Instead, we choose to revisit our rulings in *Stewart* and in *Sharp v. 251st St. Landfill,* 810 P.2d 1270, 1273 (Okla.1991).

The majority recognized in *Stewart,* that adjacent landowners would be entitled to participate in an individual proceeding, conducted pursuant to the Administrative Procedures Act, if another source of law required the agency's action to be preceded by notice and an opportunity for a hearing. The *Stewart* Court also acknowledged that the source of law could be statutory or constitutional. The *Stewart* and *Sharp* Courts noted that no statutory source existed requiring a hearing before the issuance of a permit pursuant to the Solid Waste Management Act. **That is no longer the law in Oklahoma.** Section 1–2415 of the Act now specifically provides that "... **any person who is a resident or owner of a business or land in the county of the proposed disposal site, or of an adjacent county, who may suffer environmental damage as a result of the construction and operation of the site, shall have the right to request and participate in a hearing as a party to an individual administrative proceeding on the permit."**

*Stewart* and *Sharp* also stand for the proposition that neither the United States nor the Oklahoma constitutions vest adjacent landowners with any legally recognized interest mandating the application of due process principles. The portion of the *Stewart* and *Sharp* opinions relating to the right to statutory notice has been overruled by the Legislature. Today, we revisit, and overrule, the portions of the opinions holding that adjacent landowners have no constitutionally protected interest requiring notice and an opportunity for hearing before the issuance of a landfill permit. Because *Sharp* essentially relied upon *Stewart* as dispositive of the issue presented here, we discuss the reasoning of *Stewart.*

In finding that no liberty interest was threatened by the granting of the landfill permit in *Stewart,* the Court relied upon

three federal cases—*Fusco v. State of Connecticut,* 815 F.2d 201, 206 (2d Cir.1987), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987); *BAM Historic Dist. Ass'n v. Koch,* 723 F.2d 233 (2d Cir.1983); and *Mehta v. Surles,* 720 F.Supp. 324 (S.D.N.Y.1989). None of these cases involved the placement of a landfill adjacent to living quarters. Instead, *Fusco* and *BAM* involved the placement of a homeless shelter in a neighborhood setting; and *Mehta* concerned the location of a home for the mentally retarded. There is a qualitative difference between placement of a group home in a neighborhood, and the infusion of waste with potential ecological harm. If a resident of a group home creates a disturbance or defaces surrounding property, the problem is temporary and easily corrected. Here, the adjacent landowners have alleged harm which cannot be corrected either by the arrest or suppression of the offending party or by the application of a coat of paint. Their concerns include the potential for harmful contaminates in both the air and in ground water underlying their property, odor, property devaluation, and safety hazards—all arising from the landfill site.

In *Brown's Ferry Waste Disposal Center, Inc. v. Trent,* 611 So.2d 226, 228 (Ala.1992), the Alabama Supreme Court held that unless notice and an opportunity for a hearing is afforded citizens affected by the award of a contract for a solid waste disposal site, the contract is void. In so doing, the *Brown's Ferry* court found that citizens have a vital interest in the disposal of solid wastes, in the site approved for their disposal, and in the contract awarding the right to operate a landfill facility. The findings in *Brown's Ferry* are based upon a recognition of the principle that procedural due process, protected by the constitutions of the United States and of Alabama, requires notice and an opportunity to be heard when one's life liberty, or property interests are about to be affected by governmental action.[19]

O.S.Supp.1992 § 1–2414, and it provides for certain rights of residents whose homes come within one-half mile of the permit site.

**19.** Ex parte *Lauderdale County,* 565 So.2d 623, 627 (Ala.1990). See also, *Application of Modern*

*Indus. Waste Serv., Inc.,* 153 N.J.Super. 232, 379 A.2d 476, 479 (1977) [New Jersey court, stating that the state's administrative procedures act did not provide a right to a hearing, held that where township did not claim that any direct property

Whether a party has a right to contest an administrative action is largely a question of law.[20] However, the trend is toward an enlargement of the class of people who may protest administrative action.[21] This nation's highest court has recognized that aesthetic and environmental well-being, like economic prosperity, are important ingredients of the quality of life in our society.[22] The Oklahoma Legislature has recognized the concept of "environmental damage" in its amendment to the Solid Waste Management Act allowing those parties in close proximity to a proposed dumping site to have the opportunity for a hearing.[23] The concept of property in the due process sense is flexible.[24] We agree with the Alabama Supreme Court that notice and an opportunity for a hearing must be afforded to citizenry whose health, property use, and drinking water may be affected by the location of a landfill site. In so doing, we specifically overrule *Stewart v. Rood*, 796 P.2d 321, 333–335 (Okla.1990) and *Sharp v. 251st St. Landfill*, 810 P.2d 1270, 1273 (Okla.1991) to the extent that they hold that adjacent landowners have no constitutionally protected interest sufficient to require notice and an opportunity to be heard before a landfill permit will issue.

Our conviction that adjacent landowners whose property may be substantially affected by the installation of a landfill site have a due process right to notice and an opportunity to be heard is supported by statutory enactments ignored by the *Stewart* Court. Title 60 O.S.1991 § 66[25] provides that adjacent

---

rights of its own were affected by operation of a solid waste transfer station in township but relied upon purported difficulties experienced by its citizens, the township lacked sufficient property interest to invoke due process principles. The opinion infers that the citizenry might have been entitled to such protections.]. But see, *E. & E. Hauling, Inc. v. Pollution Control Bd.*, 107 Ill.2d 33, 89 Ill.Dec. 821, 823, 481 N.E.2d 664, 666 (1985).

**20.** *Missouri–Kansas–Texas R.R. Co. v. State*, 712 P.2d 40, 42 (Okla.1986); *National Motor Club of Oklahoma v. State Ins. Bd.*, 393 P.2d 511, 514 (Okla.1964).

**21.** *Association of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 155, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 189 (1970). See also, Annot., "Standing of Private Citizen, Association, or Organization to Maintain Action in Federal Court for Injunctive Relief Against Commercial Development or Activities, or Construction of Highways, or Other Governmental Projects, Alleged to be Harmful to Environment in Public Parks, Other Similar Recreational Areas, or Wildlife Refuges," 11 A.L.R.Fed. 556, 562 (1972).

**22.** *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 685–86, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254, 268–69 (1973).

**23.** Title 63 O.S.1991 § 1–2415, see note 6, supra.

**24.** See, *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983).

**25.** Title 60 O.S.1991 § 66 provides:
"Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations."

The dissent's argument that today's opinion infringes upon the teachings of *Turley v. Flag–Redfern Oil Co.*, 782 P.2d 130, 135–36 (Okla. 1989) is unpersuasive. In *Turley*, surface owners argued that they were entitled to notice and an opportunity to be heard before additional wells could be drilled upon the surface estate. This Court held that notice was not required under those circumstances for two reasons: 1) the surface owner was not an "aggrieved party" within the meaning of 52 O.S.1981 § 113; and 2) surface estates, for purposes of oil and gas development, are servient to the dominant mineral estate. The cause presented here is factually distinguishable from *Turley*. Here, the adjacent landowners are given a statutory right to notice. It appears in 60 O.S.1991 § 66 which specifically provides that adjacent landowners are entitled to "previous reasonable notice" of the intent to make excavations. Additionally, there is no long-standing recognition that landowners adjacent to a land disposal site have any interest in their property rights subservient to those of their neighbors. In the realm of oil and gas law, it has long been recognized that the surface estate is servient to the dominant mineral estate for certain purposes. *Turley v. Flag–Redfern Oil Co.*, this note, supra; B. Walker, "The Evolving Dominance of the Surface Estate," 34 Inst. on Oil & Gas L. & Tax'n 123, 128 (1983); L. Sellers, "How Dominant is the Dominant Estate? or, Surface Damages Revisited," 13 Inst. on Oil & Gas L. & Tax'n 377–78 (1962); Annot., "What Constitutes Reasonably Necessary Use of the Surface of the Leasehold by a Mineral Owner, Lessee, or Driller under an Oil & Gas Lease or Drilling Contract," 53 A.L.R.3d 16, 25 (1973).

landowners have the right to lateral and subjacent support received from adjoining property. The same statute states, specifically, clearly, and without ambiguity, that before excavation on adjoining property commences, **an adjacent landowner is entitled to "previous reasonable notice."** The record supports a finding that excavation will occur on the landfill site.[26] Here, is the statutorily required notice provision not revealed in the reasoning of the majority in *Stewart.*

■ Even if we were not convinced that adjacent landowners had constitutional rights sufficient to require the application of due process, we would be constrained to hold that, under the facts presented, these landowners are entitled to notice and an opportunity to be heard. Water rights are property which are an important part of the landowners' "bundle of sticks."[27] The use and control of fresh water is a matter of *publici juris*, and of immediate local, national, and international concern. No commodity affects and concerns the citizens of Oklahoma more than fresh groundwater. Here, evidence was presented that drilling operations, which the mineral interest owners are entitled to engage in on the landfill site, could potentially contaminate the ground water supply—the same supply underlying the adjacent landowners' property and which they use for drinking purposes. It is a problem which must be explained. These landowners' water-related property interest alone requires that they be given notice and an opportunity to participate in a hearing whose outcome could affect their constitutionally protected rights.[28] It would be incongruous to protect oil and gas interests and to ignore the protection of fresh water. If we continue to do so, the price of a barrel of water will exceed the price of a barrel of oil.[29]

## CONCLUSION

■ Minimum standards of due process require administrative proceedings that may directly and adversely affect legally protected interests be preceded by notice calculated to provide knowledge of the exercise of adjudicative power and an opportunity to be

---

See also, *Wellsville Oil Co. v. Carver*, 206 Okla. 181, 242 P.2d 151, 154 (1952). It is also not sufficient to argue that we should ignore the issue of notice because the parties did not cite 60 O.S.1991 § 66. For us to do so in this cause would merely perpetuate the errors of *Stewart v. Rood*, 796 P.2d 321, 333–335 (Okla.1990) and *Sharp v. 251st St. Landfill*, 810 P.2d 1270, 1273 (Okla.1991).

26. The hydrological expert was asked about a technique for protecting the ground water in the area. The pertinent questions and answers are:

"Q. What would be the technique?
A. To excavate to the bottom of the pits and bring it back up with lifts of fill, six inches at a time, compact it, just as you do the liner.
Q. Okay. On those area (sic) where you are not bridging filled in pits that had water in them but you have just got a—it's a pit area and there is mine spools in that area, then you excavate down to two foot above the groundwater level and you construct the clay liner, do you think there will be settling there?
A. Yes, sir."

Other depositions refer to the use of backhoes, bulldozers and graders on the property. The permitting process sanctioned by the Department of Health and the Board of Health also refers to the depth of cells used for landfill sites. Those cells are limited to a depth of eight feet or less in thickness measured perpendicular to the working face. *Regulations Governing Solid Waste &*

*Sludge Management*, (OSDH Bulletin 0524) § 3.0.10, p. 33 (April 2, 1987).

27. Title 60 O.S.1991 § 60 provides in pertinent part:

"A. The owner of the land owns water standing thereon, or flowing over or under its surface but not forming a definite stream...."
*Franco–American Charolaise, Ltd. v. Oklahoma Water Resources Bd.*, 855 P.2d 568 (Okla.1990) (Readopted and reissued, April 13, 1993); J. Sax, "The Constitution, Property Rights and the Future of Water Law," U.Colo.L.Rev. 257, 260 (1990).
Assuming arguendo that there is forestry on the property lines adjoining the landfill site, the adjacent landowners may have another property interest subject to due process protection. Title 60 O.S.1991 § 68 provides:

"Trees whose trunks stand partly on the land of two or more coterminous owners belong to them in common."

28. Having determined that due process principles are applicable, the "process due" question is answered by 75 O.S.1981 § 314(a), see note 16, supra, and discussion concerning procedure in relation to the mineral interest owners, pp. 9–10, supra.

29. This has happened before. See R. Kerr, *Land, Wood & Water*, Ch. 3, p. 44 (Fleet Publishing Co. 1960).

heard.[30] No less than economic prosperity, aesthetic and environmental well-being are important essential ingredients of the quality of life in our society. This Court has the responsibility to exercise both the will and the wisdom to conserve the good earth. A decision which would allow redress for constitutionally protected interests only after those rights were irreparably damaged would not reflect that responsibility. Both mineral interest owners and property owners whose residences may be affected by a solid waste management disposal facility have legally protected rights sufficient to require the application of due process privileges guaranteed by the United States[31] and Oklahoma Constitutions.[32] However, in reaching the conclusion that mineral interest owners and adjacent landowners are entitled to notice and an opportunity to be heard, we recognize that the Oklahoma Constitution, in itself, provides bona fide, separate, adequate and independent grounds upon which to rest our holding.[33]

We decline Six–Hart's suggestion that we make our decision completely prospective. The action here is a direct, not a collateral attack, pursued because the parties were not granted their constitutional rights. Neither the United States Constitution nor the Constitution of the State of Oklahoma delineate the effective date of judicial opinions. Our decision today is given effect in the immediate cause, all appellate and certiorari cases in the appellate pipeline, and prospectively to all future cases after the issuance of mandate.[34]

**AFFIRMED.**

HODGES, C.J., and OPALA, ALMA WILSON and WATT, JJ., concur.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, and SUMMERS, JJ., concur in part and dissent in part.

LAVENDER, V.C.J., concurring in part, dissenting in part:

While I concur the mineral interest owners have a property interest which entitles them to due process I dissent from that part of the majority opinion which holds adjacent landowners have a **constitutionally** protected right based on the due process clauses of OKLA. CONST. art. 2, § 7 and U.S. CONST. amend. XIV to notice and an opportunity for a hearing before a landfill permit is granted to their neighbor and to the overruling of *Stewart v. Rood*, 796 P.2d 321 (Okla.1990) and *Sharp v. 251st Street Landfill, Inc.*, 810 P.2d 1270 (Okla.1991), to the extent those cases held no such constitutional right exists. Although it may be good public policy for the Legislature to allow adjacent landowners or others a **statutory** right to a hearing, public policy in this area should be set by the Legislature, not this Court, under the guise of a constitutional mandate. Under its mandate the majority unwisely and without basis expands the range of constitutionally protected interests in the due process area and, in effect, transforms settled tort law and equitable remedies into constitutional swords by which adjacent landowners are allowed to become the overseer of their neighbor's property, cutting down the use of that property merely on the allegation that use may, at some unspecified time in the future, cause them harm. In doing so the majority makes several mistakes as to the reach of due process principles which I will explain below.

In both *Stewart* and *Sharp* we held adjoining or nearby landowners were not entitled

---

**30.** *Harry R. Carlile Trust v. Cotton Petroleum*, see note 12, supra; *Cate v. Archon Oil Co.*, see note 12, supra.

**31.** U.S. Const. amend. 14, § 1, see note 14, supra.

**32.** The Okla. Const. art. 2, § 7, see note 15, supra.

**33.** *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983). Our due process clause, the Okla. Const. art. 2, § 7, has a definitional sweep that is coextensive

with its federal counterpart. *Black v. Ball Janitorial Serv., Inc.*, 730 P.2d 510, 513 (Okla.1986); *McKeever Drilling Co. v. Egbert*, 170 Okla. 259, 40 P.2d 32, 35 (1935).

**34.** *Shea v. Louisiana*, 470 U.S. 51, 57, 105 S.Ct. 1065, 1069, 84 L.Ed.2d 38, 45–46 (1985); *United States v. Johnson*, 457 U.S. 537, 562, 102 S.Ct. 2579, 2594, 73 L.Ed.2d 202, 222 (1982); *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 1164, 28 L.Ed.2d 404, 410 (1971); *Schepp v. Hess*, 770 P.2d 34, 39 (Okla.1989).

to a hearing prior to issuance of a landfill permit to their neighbor under State or federal due process principles because no legally recognized interest of such landowners was invaded by the granting of such a permit. *Stewart,* 796 P.2d at 333–335; *Sharp,* 810 P.2d at 1273. Our rulings in these cases left open the possibility for remedial relief in the form of damages should the landfill cause injury to an adjacent landowner or injunctive relief, including the ability to obtain such latter relief under generally accepted equitable principles should the landfill be found to be an anticipatory nuisance at a particular permitted location or that it would probably result in pollution of water sources of nearby landowners. *Stewart,* 796 P.2d at 324, f.n. 2; *Sharp,* 810 P.2d at 1275–1276. In my view, *Stewart* and *Sharp* were correctly decided and should remain the law in this jurisdiction.

The central fallacy in the majority's reasoning as to adjacent landowners is that it fails to recognize the licensing process, **directed as it is to another person's land,** does not implicate in any direct, substantial and immediate way any property interests of adjacent landowners subject to constitutional due process protection at the administrative level. Only if the administrative process is **directed toward** depriving adjacent landowners of some right in life, liberty or property would they be entitled to constitutional notice and an opportunity for a hearing at the administrative level. The process is not so directed and the recent case of *State ex rel. Corporation Commission v. Texas County Irrigation and Water Resources Association, Inc.,* 818 P.2d 449 (Okla.1991), illustrates the point.

In *Texas County* we held all owners of water rights in the Ogallala Aquifer were not entitled to personal notice of a proceeding before the Oklahoma Corporation Commission (OCC) brought by two companies seeking to use enhanced recovery methods to increase the recovery of oil from a common source of supply, which had the potential for polluting the fresh water strata of the water rights owners. *Id.* at 452–454. We recognized in *Texas County* that where OCC had been given the duty to protect the underlying

fresh water strata from potential polluting effects that the water property rights of surrounding property owners were not invaded by the proceeding, but were protected therein. *Id.* at 453–454. We held such a situation involved a proper and lawful exercise of the police power (i.e. the duty to protect the fresh water from pollution), which did not implicate the due process rights of those nearby owners sought to be protected.

*Stewart, Sharp* and *Texas County* merely exhibit a recognition that where the government in a licensing or similar proceeding does not directly affect the legal rights of nearby property owners or deprive them of any constitutionally protected interest in life, liberty or property, procedural due process principles are simply *not* implicated. See *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (nursing home residents have no constitutional right to a hearing before a state or federal agency may revoke the home's authority to provide them with nursing care at government expense even though the revocation may be harmful to some patients, including loss of their present home in the nursing care facility). *O'Bannon,* relying on the *Legal Tender Cases,* 12 Wall 457, 551, 79 U.S. 457, 551, 20 L.Ed. 287 (1870), recognized that the due process clause has always been understood as referring only to direct appropriation or interference with protected rights and not to the consequential injuries resulting from the exercise of lawful power. *O'Bannon,* 447 U.S. at 789, 100 S.Ct. at 2477. The United States Supreme Court in *O'Bannon* distinguished between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action **directed against a third party** and that affects the citizen only indirectly or incidentally. *Id.* at 788, 100 S.Ct. at 2476. In the former situation due process protections attach; in the latter they do not.

The licensing process at issue here is not directed at the legal rights of nearby property owners, **but at the landowner applying for the license to use his land as a landfill.** Any injury or harm nearby owners may suffer can, thus, be considered nothing other than the indirect or incidental effect of gov-

ernment action which is directed against or at a third party. Accordingly, nearby landowners simply have no constitutionally based due process rights in the licensing scheme.

The majority's holding that nearby property owners are entitled as a matter of constitutional due process to a hearing in the licensing by the government of use of their neighbor's property improperly expands the due process protections of the Oklahoma and United States Constitutions and amounts to a ruling one property owner has a constitutionally based due process right to be the overseer of the use of his neighbor's property. Such a holding opens up a myriad of licensing proceedings to similar due process challenges, e.g. licenses for a laundry, a tavern, a liquor store, a slaughterhouse, a gas station or convenience store. It also opens up numerous farming or animal husbandry activities which may be regulated by the State to similar due process attacks by neighbors if a permit from the government is necessary or is made necessary by legislative enactment. Other examples can surely easily be found.

All of the activities mentioned above may be deemed offensive in one manner or another by some persons and all hold the potential for environmental degradation of neighboring property or other nuisance causing effects if they are not conducted in an appropriate way. That is why *Stewart* and *Sharp* left open the possibility of monetary and/or injunctive relief, including relief in the form of an injunction to stop an anticipated nuisance even after a landfill has been permitted. I reiterate, however, although it may be good public policy for the Legislature, by **statute,** to allow neighbors or other citizens the right to notice and an opportunity for a hearing before their neighbor is allowed to engage in a certain activity under a government permit, that decision should be made by the Legislature and not this Court by misguided constitutional decree.

The error of the majority is easily seen by a review of two United States Supreme Court cases it cites in partial support of its holding. The majority cites *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), for the proposition the modern

trend is to expand or enlarge the class of people who may protest administrative action. It also relies on *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), to assert that aesthetic and environmental well-being, like economic prosperity, are important ingredients of the quality of life in our society. I do not disagree with these notions as a matter of policy. However, the fallacy in the majority's reliance on these cases is that neither was concerned with procedural due process or whether a person was **constitutionally** entitled to notice or opportunity to be heard under that clause prior to administrative action. Both were concerned with whether under the federal Administrative Procedure Act and the respective federal statutory enactments there at issue (or administrative regulations) certain persons or organizations had standing to challenge administrative action. In both cases the United States Supreme Court found standing, but in no way intimated the interests sought to be protected by the respective challengers of administrative action were subject to protection under the due process clause.

What the majority has done here is engraft onto the due process clauses of both our State and federal constitutions an administrative procedure act, something this Court has no business doing and which other courts have recognized is clearly unwarranted. In *BAM Historic District Association v. Koch*, 723 F.2d 233 (2d Cir.1983), in rejecting a due process liberty interest challenge by community residents who sought to enjoin the operation of a shelter for homeless men in the community, the Second Circuit said the following:

> The Fourteenth Amendment does not impose upon states and localities either an Administrative Procedure Act to regulate every governmental action nor an Environmental Policy Act to regulate those governmental actions that may affect the quality of neighborhood life. Whether notice and hearing procedures should be instituted to broaden public participation in governmental decisions of the sort challenged

in this case remains a matter for consideration by state and local legislative bodies. *Id.* at 237.

The majority further disregards other recent authority of this Court which unequivocally shows no due process rights at the administrative level are constitutionally mandated for adjacent landowners. In *Turley v. Flag–Redfern Oil Co.*, 782 P.2d 130 (Okla. 1989), a surface owner (who owned no mineral interest) contended he had a constitutional due process right to notice and an opportunity to be heard in an administrative proceeding before the Oklahoma Corporation Commission (OCC) when OCC heard an application to establish, reestablish, or reform an oil and gas drilling and spacing unit which included the surface owner's property. We held an order of OCC which increased the number of wells which could be drilled did not invade any property right of the surface owner because under Oklahoma law the surface estate was servient to the mineral estate when purchased and had always been subject to the valid exercise of the police power to control the density of drilling to prevent waste of oil and gas and to protect the correlative rights of mineral interest owners. Id. at 135.

In the oil and gas situation involved in *Turley* the mineral and surface interest owners are recognized to have concurrent possession of the surface. *Hinds v. Phillips Petroleum Co.*, 591 P.2d 697, 699 (Okla.1979). In other words, both have a property interest in the surface. Surely, if no protected property interest was recognized for the surface owner in *Turley*, who actually owned the land where increased drilling would occur, no protected property interest can be recognized in adjacent landowners who have no recognized property interest in the land where the landfill will be located.

In my view, the majority *sub silentio* overrules *Turley* or, at least, casts a dark cloud over our holding there by its ruling in this case. A surface owner or adjacent landowner, after reading the majority's decision will merely have to allege the potential for environmental degradation (surface, water or air)

to be entitled to due process protections before OCC in the future in matters concerned with permitting oil and gas operations because it is beyond question that oil and gas operations, if they are conducted in an inappropriate manner, hold the potential for polluting the surrounding property of adjacent or nearby owners. *See e.g. Portable Drilling Corporation v. Guinn*, 204 Okla. 68, 226 P.2d 923 (1950) (oil and gas lessee successfully sued when release of salt water and other deleterious substances found their way to adjacent property where it polluted surface and growing crops). Although it may be argued landfills hold the greater potential for environmental degradation, it is my view experts would surely argue the point. Further, I fail to see how the majority could differentiate the potential polluting effects of oil and gas operations (and the other activities I have previously mentioned, e.g. animal husbandry) from those of a landfill so that nearby landowners would be entitled to constitutional protection in the landfill situation, but not in the others. To so rule is to find distinction where there is no true measure of difference.

*Turley* also recognized that where injured parties have an alternative statutory remedy to claimed due process violations, any procedural defects are cured by the remedy afforded. *Turley*, 782 P.2 at 136. In other words, even assuming a constitutionally protected interest, if the Legislature has fashioned an adequate statutory remedy, *Turley* holds, no due process violation will occur by the lack of notice or opportunity for a hearing at the administrative level. In *Turley* this Court found such an adequate alternative remedy in the form of the Oklahoma Surface Damages Act, 52 O.S.Supp.1982, § 318.2 et seq., as amended, which entitles a surface owner to compensation for injury to his property.

In regard to the present case, 63 O.S.Supp. 1986, § 2258, requires a landfill permit applicant to attempt to gain consent of persons having an occupied residence within 500 yards of the landfill site.[1] If a person's

1. Since this matter was decided in the district court § 2258 has been altered by the Legislature

to increase the affected area to include occupied

residence is within this distance and consent is not given the landfill may still be permitted if it meets all other requirements of the law. If the permit issues, however, persons within the specified distance are given a statutory cause of action against the applicant for loss of value to their land and residence caused by the operation of the landfill. Further, in any action brought for such loss of value the district court is given authority to weigh the public benefit of the proposed disposal site against the negative impact to the residences in the affected area and to enjoin operation should a determination be made the negative impact outweighs the public benefit. Appellee Most and apparently also appellees Dulaney and Harris argue they are within the 500 yard zone. The majority does not answer why in this situation, assuming these appellees do have a protected interest and they are within the 500 yard distance, *Turley's* holding regarding an alternative statutory remedy would not cure any procedural due process defects, as this Court ruled the Surface Damages Act cured in *Turley* in regard to the surface owner. Although I do not hold the view that statutory remedy is necessary because I do not believe adjacent landowners have a protected interest sufficient to invoke due process protections in the administrative process, the majority should concern itself with this potential alternative remedy before it mandates procedural due process protections, just as this Court previously did in *Turley*.

The majority further errs when it relies on 60 O.S.1991, § 66, which provides that adjacent landowners have the right to lateral and subjacent support received from adjoining land. In the first instance, nowhere do appellees rely on this provision and we should not base our decision in such an important case on a theory the parties have not even contemplated. Secondly, aside from not relying on the statute, appellees make not one allegation the construction or operation of the landfill at issue will have an adverse impact on any lateral or subjacent support their land may receive from the property on which the landfill has been permitted. Thirdly, to the extent § 66 might be said to

be applicable to the construction of a landfill any notice required by § 66 is not tied to the administrative permitting proceeding or any constitutional requirement for a hearing within the administrative process. If notice to an adjoining landowner is actually required under § 66 such notice is obviously separate from the administrative process, and any relief an adjoining landowner feels himself entitled under that provision should take the form of a damage action or an equitable one, which as previously mentioned, both *Stewart* and *Sharp*, have left available.

This Court has a duty to protect the constitutional due process rights of our citizens. When those rights are invaded or are actually directly threatened with invasion by unlawful government action we should be vigilant to step in and protect them. We, however, also have a duty to respect the other branches of government in our tripartite system and to recognize the roles of each of these branches. In my view, the majority has improperly stepped into the role of a super-legislature in this particular case by mandating constitutional due process protections where no constitutionally protected interest exists. The majority has, in effect, mandated the strictures of a legislative administrative procedure act, and usurped legislative power in doing so. Accordingly, for the reasons I have set forth I dissent to the holding of the majority adjacent or nearby landowners have a constitutionally protected right to procedural due process in the administrative proceeding leading to the permitting of the instant landfill and to the overruling of *Stewart* and *Sharp* to the extent those cases are inconsistent with the present holding of the majority.

I am authorized to state that Justice SIMMS, Justice HARGRAVE and Justice SUMMERS join in the views herein expressed.

residences within one-half (½) mile of a landfill site. 63 O.S.Supp.1992, § 1–2414.