**MAYBERRY et al. v. GADDIS et al.**

No. 13332—Opinion Filed Feb. 6, 1923.

Rehearing Denied March 13, 1923.

(Syllabus.)

1. **Counties—Elections — Issuance of Road Bonds—Publication of Notice.**

Section 7621, Revised Laws 1910, requires that the proclamation of the board of county commissioners calling an election for the purpose of voting on the issuance of bonds for the construction of permanent roads and bridges shall be published in a weekly newspaper of general circulation in the county for four consecutive weeks prior to the election, but the publication in a daily newspaper published in such county, and of general circulation therein, on Thursday of each week for four weeks prior to the date of the election is a substantial compliance with the statute.

2. **Elections—Validity—Mere Irregularities.**

If the statute does not provide that the violation of certain statutory provisions will render an election void, the violation of the statute will be treated as an irregularity going to the form instead of the substance. Where from all the facts the court concludes that, in spite of the departure from the statutory requirements, a full and fair ballot has been cast.

3. **Counties—Bond Election—Illegal Votes —Burden of Proof.**

Where it is sought to prevent the issuance of road bonds because illegal votes were cast in the election authorizing the issuance of such bonds, those seeking to overcome the result as declared by the election officers have the burden of proving not only that illegal votes were cast, but by whom, and for what issues or question submitted such votes were cast.

4. **Elections—Preventing Voting—Burden of Proof.**

One who seeks to have an election declared void and set aside on the ground that by irregularities and fraudulent misconduct of the election officers in some precincts persons were prevented from voting, must allege and prove that such persons were qualified voters, and that the number thereof was sufficient that, if they had voted and had cast their vote for the losing proposition, the result of the election would have been changed.

5. **Counties—Road Bond Election—Ballot —State Road.**

Section 1, chapter 22, Laws of 1916, authorizes bonds to be issued for building and constructing permanent state roads, but it is not necessary that the road along the route described in the ballot shall have been designated as a state road prior to the time of the election.

6. **Same—Issuance of Bonds — Compliance with Statutory Requirements as to Time and Interest.**

A ballot providing "Shall the board of county commissioners issue negotiable coupon bonds of Washington county, Oklahoma, in the sum of $675,000 to mature within 25 years from date thereof, bearing interest at the rate of not to exceed six per centum per annum, payable semi-annually, for the purpose of building and constructing a permanent state road," is in substantial compliance with the provision of section 1, chapter 95, Session Laws 1921, and section 7625, Revised Laws 1910, as to the length of time the bonds are to run and the rate of interest they shall bear.

**7. Counties — Bonds for State Roads and Bridges—Conditions.**

The Legislature having conferred authority to incur indebtedness and issue bonds for permanent state roads and bridges, and the provisions of the statute being silent in regard to the conditions which may be imposed, the voters were authorized to impose as condition precedent to the sale of· the bonds the following: "The building and constructing of said permanent state road shall be in conjunction with the federal or state Government, and only so much of said bonds shall be sold at any one time as will equal the amount of federal or state aid money then allotted for the purpose of contributing toward making the improvements for which said bonds are to be issued," and such provision does not invalidate the election and such condition is valid and binding upon the county in the sale of the bonds issued by authority of such election.

**8. Same—Taxation — Submission of Question—Invalidity of Statute.**

Section 1611, Revised Laws 1910, providing that there shall accompany a proposition of incurring the indebtedness a proposition to authorize an annual tax for the payment thereof in addition to the usual taxes provided by law, and providing that no vote adopting the question proposed · shall be valid unless it likewise adopts the amount of tax to be authorized to meet the liability incurred, is repugnant to the provisions of section 26, article 10, of the Constitution, which provides that the county incurring the indebtedness provided for therein shall "before or at the time of doing so provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the· principal thereof within 25 years from the time of contracting the same," and it is not necessary to submit to the voters the proposition of the amount of tax to be authorized to meet the indebtedness authorized by the election.

Error from District Court, Washington County; J. R. Charlton, Judge.

Action to enjoin issuance of road and bridge bonds by W. F. Mayberry et al. against Gaddis et al., composing the Board of County Commissioners of Washington County, Oklahoma. Judgment for defendants, and plaintiffs bring error. Affirmed.

Kornegay & Probasco, for plaintiffs in error.

H. C. Farrell, Co. Atty., and B. A. Lewis, Asst. Co. Atty., for defendants in error.

COCHRAN, J. The plaintiffs in error filed this action in the district court of Washington county to enjoin the issuance of $700,000 of road and bridge bonds. Judgment was rendered for the defendants, and plaintiffs have prosecuted their appeal to this court. The trial court made special findings of fact and conclusions of law and we have examined the record and find that the findings of fact are supported by the evidence.. We shall now consider the various objections made to the conclusions of law.

The notice of the time and place where the special election to vote on the bond issue would be held was published in five issues of the Bartlesville Daily Enterprise, a daily paper published in the city of Bartlesville, the publication appearing on Thursday of each week for five weeks. The plaintiffs contend that under the provisions of section 7622, Rev. Laws 1910, the notice should have been published in a weekly newspaper for four consecutive weeks prior to the date of said election. The court found that at the time of the publication there . were weekly newspapers in general circulation in Washington county; that the Bartlesville Daily Enterprise had been designated by the county commissioners as the official paper of Washington county, and that it was also a paper of general circulation in Washington county. The defendants call attention to chapter 81, Session Laws 1919, which provides:

"It shall not be necessary to publish legal notices, when published in a daily newspaper. in every issue thereof. but it shall be sufficient to publish such notices. in the issue of a daily newspaper published on Thursday of each week during the required period of publication."

We are of the opinion that the last mentioned statute does not authorize the publication of notices in a daily newspaper where under existing provisions of law it .is provided that such notices shall be published in a weekly newspaper, but where the law provides that the legal notices shall be published for a certain number of weeks, a publication in a daily newspaper on Thursday of each week would be a compliance with the statute by reason of chapter 81, Session Laws 1919, and so it is our opinion that a strict compliance with the provisions of the law required a publication of the notices of this bond election to be given by publication for four consecutive weeks in a weekly newspaper. It does not necessarily follow, however, that a failure to give the notices. in the manner prescribed by the statute invalidates the election or the bond issue based thereon. In North v. McMahan, 26 Okla. 502. 110 Pac. 1115, this court had occasion to pass on a bond issue where the provision of law required notice by publication in two weekly newspapers, which notices, among

other things, were required to state the date of the election. The notice in one of the papers gave the correct date of the election. The other gave the date of the election as October 12th, instead of October 19th. The court held that the irregularity of the notice did not invalidate the election and said:

"Where, in a controversy arising out of a county election held for the purpose of voting courthouse and jail bonds, it is shown that the provisions in reference to notice of the date of election were substantially complied with, as required by Snyder's Compiled Laws Oklahoma, 1909, section 1715, and there is no averment or showing that the electors did not have actual knowledge of the election and failed to participate therein by reason thereof, said election nor the bonds issued pursuant thereto will not be set aside."

In Lamb v. Palmer, County Treasurer, 79 Okla. 68, 191 Pac. 184, it was contended that the election was void for the reason that the election was held in the city hall and not in the different wards of the city, as required by statute, and this court in the second syllabus of the opinion held:

"The general rule is, where the statute does not in express terms declare an election void for violation of certain statutory provisions, the election will be sustaintd, and the violation of the statute will be treated as an irregularity going to the form, instead of to the substance where, from all the facts, the court concludes that, in spite of the departure from statutory requirements, a full and fair ballot has been cast, and a true and fair return of the entire election has been canvassed and made."

In the case of Town of Grove v. Haskell, Governor, et al., 24 Okla. 707, 104 Pac. 56, there was a failure to comply with the statutory provisions relative to notice of the election, and the court said:

"But where, in a controversy arising out of an election held, it is shown that the provisions in reference to notice were substantially complied with, and there is no averment or showing that the electors did not have actual notice or knowledge of the election, and failed to participate therein by reason thereof, the same will not be held void or set aside. The vital and essential question in such cases is, Did the want of notice or knowledge result in depriving a sufficient number of electors of the opportunity to exercise their franchise as to change the result of the election? If not, then the will of the electors, as expressed, should be sustained."

While the publication in the daily paper was not a literal compliance with the provisions of the statute, it did constitute substantial compliance therewith, and it does not appear from the record that any elector was deprived of an opportunity of voting by reason of the publication in a daily paper instead of a weekly paper.

It is contended that the election was invalid because the form of ballot used placed the affirmative and negative on the same line instead of placing the negative under the affirmative as provided by statute. It appears that the proclamation prescribed the form of ballot required by the statute, but in the printed form furnished to the voters the voting squares were so placed that the word "No" did not appear under the word "Yes", but appeared at the right side of the ballot sheet with a square to the left, and the word "Yes" appeared on the left side of the ballot sheet with the square to the left. This question has been decided adversely to the contention of the plaintiffs in State ex rel. Edwards v. Millar, Mayor, et al., 21 Okla. 448, 96 Pac. 747, and North v. McMahan, 26 Okla. 502, 110 Pac. 1115.

It is further insisted that the election was invalid because the notice of election stated that only registered voters would be entitled to vote; that in some instances those who were not registered were permitted to vote and in other instances were denied the right to vote. The finding of the trial court was that in one or two precincts voters were allowed to vote without registering by making affidavit that they were qualified voters, the registration books not having been opened 20 days before the election and kept open for ten days; that in one of the Copan precincts about 20 votes were cast by voters who had not registered; that in the Hogshooter precinct a number of votes were cast by voters who had not registered; that in the Copan precinct a large majority was returned in favor of the proposition and in the Hogshooter precinct a large majority was returned against the proposition, and that no evidence was introduced, or attempted to be introduced, to ascertain, or try to ascertain, how many unregistered voters were permitted to vote or to prove whether said voters voted for or against the bonds or to show that any qualified voter in the county was deprived of the right to vote at said election. The court further found that, if the unregistered votes had been counted against the bonds, they would not have been sufficient to change the result of the election, and that there is no evidence that a sufficient number of illegal votes were cast to in any manner change the result of the election. In Dunagan et al. v.

Town of Red Rock et al., 58 Okla. 218, 158 Pac. 1170, the court said:

"Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast."

In Shelton et al. v. School Board, Dist. No. 22 of City of Tulsa, 43 Okla. 239, 142 Pac. 1034, it was held:

"The mere fact that an inconsiderable number of persons disqualified to vote at a bond election were permitted to participate therein is not sufficient to avoid such election, where it is possible to ascertain the true vote, and the proposition carried by the requisite number of votes." Kimberlin et al. v. Board of Commissioners, 78 Okla. 143, 189 Pac. 361; Martin v. McGarr, 27 Okla. 653, 117 Pac. 323.

Inasmuch as no evidence was introduced attempting to show how many unregistered voters were permitted to vote, or to prove whether said voters were for or against the bonds, under the authorities above cited, the election will not be held invalid because some unqualified voters voted.

It is also contended that some qualified voters were not permitted to vote, but the rule established by his court in that regard is that one who seeks to have an election declared void and set aside on the ground that by irregularities and fraudulent misconduct of the election officers in some precincts persons were prevented from voting, must allege and prove that such persons were qualified voters, and that the number thereof was sufficient that if they had voted and had cast their vote for the losing proposition the result of the election would have been changed. Snyder v. Blake, 35 Okla. 294, 129 Pac. 34; Ledbetter v. Kimsey, 38 Okla. 671, 134 Pac. 868.

It is further contended that under the provisions of section 1, chap. 22, of the Laws of 1916, the bonds are authorized to be issued for "building and constructing permanent state roads," and that the law prescribes how a state road shall be designated, and that no state road had ever been designated along the route described in the ballot. The ballot which was used in this election stated that the issue was for the purpose of "building and constructing a permanent state road, the location of said road shall be as follows," and then proceeded to describe the location of the road. Under the provisions of the act of 1916, it is not necessary that the road should be designated as a state road prior to the time the election is held. The bond issue can be voted only for constructing permanent state roads, but there is no requirement of law that such designation should precede the election.

It is further objected that the election was invalid because the ballot used did not specify the rate of interest the bonds were to bear or the length of time the bonds were to run. The portion of the ballot dealing with this matter provided:

"Shall the board of county commissioners issue the negotiable coupon bonds of Washington county, Oklahoma, in the sum of $675,000 to mature within 25 years from date thereof, bearing interest at the rate of not to exceed six per centum per annum, payable semi-annually, for the purpose of building and constructing a permanent state road?"

Section 1, chapter 95, Session Laws 1921, provides:

"Such bonds shall be issued in denominations of not less than $500, and shall be payable at such place as said county commissioners may direct not less than five nor more than 25 years from the date thereof with interest not to exceed six per cent. per annum, which said interest shall be payable semi-annually at the place where the principal is made payable," etc.

Section 7622, Revised Laws 1910, provides:

"When the county commissioners of any county in this state deem it advisable to issue bonds as herein provided, they shall, by proclamation call an election therefor, setting forth the amount of bonds proposed to be issued, the rate of interest to be paid, the purpose for which the money derived from the sale of such bonds is to be used, the length of time the bonds are to run." etc.

The act of 1916, prescribing the form of ballot to be used provides for the rate of interest, the amount of the bonds, and the maturity of the bonds, and provides that the form of the ballot prescribed shall be substantially complied with. The question for determination is whether the form of ballot used in the instant case was substantially in the form prescribed by the act of 1916. A similar question was presented for the consideration of this court in North v. McMahan, 26 Okla. 502, 110 Pac. 1115, where the ballot used for this election read:

"Said bonds to bear interest at the rate of five per centum per annum payable semiannually and shall become due and payable 11 to 20 years from their date."

It was contended that the ballot did not substantially state the length of time the bonds

were to run. The court held that the ballot used substantially complied with the form prescribed by law and that by the expression "to run from 11 to 20 years" it implied that the same were to be issued payable in series from 11 to 20 years from the date thereof. We think the ballot used substantially complied with the form prescribed by law as to the length of time the bonds were to run and by the expression "to mature within 25 years from the date thereof," the voters fairly understood that the bonds were to be issued payable in series from 5 to 25 years from the date thereof, as provided in section 1, chap. 95, of the Laws of 1921. We are also of the opinion that the provision that the bonds should bear interest at not to exceed six per centum was a substantial compliance with the section of the statute requiring the rate of interest to be stated and in substantial compliance with the form of ballot prescribed by statute. In the election so held, the commissioners were authorized to issue these bonds to bear the highest rate allowed under the statute authorizing the issuance of the bonds and the fact that by reason of the provisions of the ballot the commissioners are authorized to issue the bonds at a rate less than the rate provided by law, would certainly not invalidate the election. At the time this election was held, there was little market for bonds of this character. The voters desired to have the improvements on their roads made and desired to issue the bonds to enable this improvement to be made, and, in order to have the improvement made, were willing to pay the highest interest provided by law, but the commissioners, feeling that there might be a better condition of the bond market before the sale of the bonds was made, submitted the question in the form indicated. Bonds issued in accordance with an election where the amount of interest was submitted as in this case, would be very similar to bonds issued bearing a lower rate of interest than that authorized in the ballot. It has been held that where the rate of interest is specifically stated in the ballot, the municipal officers have the power to issue a lesser rate of bond if possible to negotiate them. Omaha National Bank v. City of Omaha (Neb.) 18 N. W. 63; Cleveland v. Calvert (S. C.) 31 S. E. 871.

It is our opinion that the voters' rights have not been infringed upon in the least, and that the form of ballot used was in substantial compliance with the statute.

It is next insisted that the election is invalid because the ballot submitting this question to the vote of the people contained the following condition:

"The building and construction of said permanent state road shall be in conjunction with the federal and state government, and only so much of said bonds shall be sold at any one time as will equal the amount of federal or state aid money then allotted for the purpose of contributing toward making the improvements for which said bonds are to be issued."

It is insisted that by reason of containing this provision the form of ballot was not in substantial compliance with the form prescribed by statute, and also that the voters were misled by such provision in that they were led to believe that a portion of the amount of the bond issue would be supplied by the state or federal government. There is no foundation for the latter claim, as the question submitted clearly showed that the entire amount of $675,000 should be authorized to be issued for the purpose of meeting like amounts to be furnished by the state or federal government. The question as to whether this provision invalidates the election because the ballot is not substantial compliance with the statute and because it imposes conditions which may or may not be performed has been one which has received much discussion. It has been insisted by some that the provision does not invalidate the bond issue, but is not a binding condition and is to be treated as surplusage. It is insisted by others, just as it was with the plaintiffs in this case, that the provision invalidates the entire election. It is our opinion that the ballot containing this provision is not in violation of the statute and that, the ballot containing substantially the provisions required to be contained by law, the insertion of this additional provision as a condition precedent to the sale of the bonds does not destroy the validity of the election. We are also of the opinion that the voters had a right, as they did in this case, to make and impose a condition on the sale of the bonds and such condition is not to be considered as surplusage. In Nalle v. City of Austin (Tex. Civ. App.) 21 S. W. 375, the bonds were voted on condition that they should be sold at par, and the court held:

"Where a proposition submitted by the city council to the voters, as required by charter, asking authority to issue certain bonds, includes the provision that such bonds are not to be sold for less than par, the council cannot, after approval by the voters of such proposition, sell the bonds for less."

In C., B. & Q. R. R. Co. v. The City of Aurora, 99 Ill. 205, the court said:

"While section 3 of the act of 1867, confers the power on the city to incur the in-

debtedness and issue its bonds to an amount not exceeding $15,000, yet it did not require the city to do so unless it saw proper to incur the liability. It is true, the section declares that 'it is hereby made their duty to borrow such sums of money, and issue bonds therefor.' That provision in the act was nugatory as the Legislature had no constitutional power to compel a city or incorporated town to incur a debt unless the legislative department of the city saw proper to do so. The Legislature could properly confer the power on the city to incur the indebtedness and issue its bonds for a corporate purpose, without a vote of the voters of the city, but it could go no further. After the power had been conferred, it was a matter entirely within the discretion of the city whether it would incur the debt and issue its bonds, or not. The city of Aurora, then, having the power to act or not under the authority conferred by section 3 of the act, if it did act, was it compelled to issue its bonds payable without conditions or any limitations whatever, or had it the right, if it saw proper to issue the bonds, to impose conditions upon which they would be payable? It would seem that there could not be much controversy over this point. The act conferring the power on the city is silent in regard to the time when the bonds shall be payable. It is also silent in regard to the terms and conditions upon which they shall be payable. Such being the case, it would seem to be reasonable that these matters were left for the city and the person to whom the bonds were to be issued, to be settled and determined by contract to be agreed upon by the parties."

In the case of The People of the State of Illinois ex rel. v. Dutcher, Supervisor, 56 Ill. 144, it was held:

"Under the law authorizing a town to determine by vote whether it will subscribe to the capital stock of a railroad company, and requiring the town supervisor to make the subscription if it be so voted, but leaving it entirely optional with the town whether it will subscribe at all, in determining the question of subscription the town may impose any conditions in respect thereto it thinks proper and the supervisor would have no power, in making the subscription, to disregard such conditions, nor would the railroad company have any right to demand he should." Coe et al. v. C. & M. R. R. Co., 27 Minn. 197.

It is further urged that the election is invalid because there was not submitted a proposition to authorize a tax for the payment of the amount of the indebtedness voted in addition to the usual taxes provided by law, and the plaintiffs rely on the provisions of section 1611, Rev. Laws 1910, which is as follows:

"When the question submitted involves the borrowing or expenditure of money the proposition of the question must be accompanied by a proposition to authorize a tax for the payment thereof in addition to the usual taxes provided for by law; and no vote adopting the question proposed shall be valid unless it likewise adopts the amount of tax to be authorized to meet the liabiliy incurred."

Section 1611, together with sections 1608, 1609, and 1610, is a general law providing that all questions submitted to the voters of county involving the borrowing of money must be accompanied by a proposition to raise a tax for the payment of the money borrowed. Section 2, chapter 22, Session Laws 1916, provides specially how the proposition of incurring the indebtedness for road and bridge proposes by issuing bonds shall be submitted to the voters. The form of ballot is prescribed and the question of levying a tax to meet the indebtedness is not provided for. Even though section 1611 should be considered as being the law, at any time after statehood it would be superseded as to the manner of submitting the question of incurring indebtedness for road and bridge purposes by section 2, chap. 22, Laws of 1916. It is contended that chapter 22, Laws of 1916, is invalid because it is a special law and is unconstitutional because section 32, art. 5 of the Constitution provides for the publication of special laws, and states that such was not done in this case. There is no showing in the record that this act of the Legislature of 1916 was not published as provided for by the Constitution, and in passing on this identical act of the Legislature, this court in the case of Dunlap v. Board of County Commissioners of Carter County, 85 Okla. 295, 205 Pac. 1100, held:

"The court will not look beyond the law to determine whether section 32, art. 5, of the Constitution, requiring notice of proposed legislation to be published for four consecutive weeks before the consideration of a bill by the Legislature, has been complied with, but in the absence of a showing to the contrary, will presume that such notice was given."

Section 26, art. 10, of the Constitution of Oklahoma provides:

"That any county, city or town, township, school district or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

It is admitted by plaintiffs that section 26, of art. 10, struck down many of the provisions of the law existing in Oklahoma Territory prior to statehood, and among other provisions was that provision that the indebtedness should be authorized by a majority of the voters voting at the election instead of the provision that the indebtedness should be incurred upon a three-fifths vote of the voters voting at the election; but it is earnestly insisted that section 1611, Revised Laws 1910, which was a portion of the statute of Oklahoma Territory existing prior to the Constitution, was not repugnant to this provision of the Constitution, and is herefore still in effect unless repealed by the act of 1916, which we have heretofore referred to. Under the provision of the Constitution, the municipal subdivision of the state should before or at the time of incurring an indebtedness provide for the collection of an annual tax. Under the provisions of section 1611, the proposition of the authority to levy the tax and the amount of the tax should be adopted at the time the question of incurring the indebtedness is submitted to a vote of the people, and in our judgment is repugnant to the above quoted provision of the Constitution. The Constitution contemplates that only the question of authority to incur indebtedness shall be submitted to a vote of the people, and that this carries with it the authority to levy the tax and that the political subdivision, which is authorized by the vote of the people to become indebted shall before or at the time the indebtedness is incurred, provide for the collection of an annual tax sufficient to pay the interest on the indebtedness as it falls due and to constitute a sinking fund for the payment of the principal. The indebtedness represented by the bonds is not incurred at the time the matter is submitted to the vote of the people. The people at such election simply authorized the incurring of the indebtedness by the municipality, and the provisions of section 1611, making it mandatory that the tax be expressly authorized at the time the question of the indebtedness is submitted to the voters, are repugnant to the language of the Constitution which permits the municipality to wait until the very time of incurring the indebtedness before making provision for the tax levy. We therefore conclude that not only was it unnecessary to submit the question of levying a tax to pay the indebtedness to the people at this election, under the provision of chapter 22, of the act of 1916, which provides the method by which the question should be submitted, but also that, under the provisions of section 26, art. 10, of the Constitution, it was unnecessary to submit this question to the voters and that the provisions of the Constitution have been complied with when three-fifths of the voters voting at the election for that purpose authorize the county to incur the indebtedness, and when the county, before or at the time the indebtedness to levy the tax and that the political sub-annual interest and fund to meet the bonds at their maturity.

It is our opinion that the judgment of the trial court should be affirmed and it is so ordered.

JOHNSON, V C. J., and KANE, McNEILL and BRANSON, JJ., concur.

KENNAMER, NICHOLSON. and HARRISON, JJ., dissent.