OSCN Found Document:CATHEY v. BD. OF COUNTY COMMISSIONERS FOR McCURTAIN COUNTY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 CATHEY v. BD. OF COUNTY COMMISSIONERS FOR McCURTAIN COUNTY
2024 OK 50
Case Number: 121954
Decided: 06/11/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 50, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

MICHAEL W. CATHEY, and VONDEROSA PROPERTIES, LLC, Plaintiffs/Appellants,
v.
THE BOARD OF COUNTY COMMISSIONERS FOR McCURTAIN COUNTY, OKLAHOMA, Defendant/Appellee,
and
McCURTAIN MEMORIAL MEDICAL MANAGEMENT, INC., doing business as McCURTAIN MEMORIAL HOSPITAL, Intervenor/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF McCURTAIN COUNTY
Honorable Emily Maxwell, Trial Judge
¶0 The Board of County Commissioners for McCurtain County, Oklahoma, approved a ballot proposal of a lodging tax increase to fund a new county hospital to be submitted to the voters. Title 19 O.S. 2021 §383 required the proposal to be published for four weeks in a county newspaper before the election, but the Board did not publish it as required. Instead, the Board, along with the Hospital, engaged in an extensive three-month campaign to inform voters of the measure. The campaign included the use of a multitude of radio advertisements, four billboards, a television interview, multiple newspaper articles, two town hall meetings, three civic club meetings, several social media posts, and one newspaper publication of the proposal two days before the election. After the measure was approved by the voters, a lodging renter and property owner filed a lawsuit in the District Court of McCurtain County, Oklahoma, seeking to have the election declared null and void due to the lack of newspaper publication. The Hospital sought to have the election upheld. The trial court granted summary judgment in favor of the Board and Hospital, and against the lodging renter and property owner. The renter and owner appealed and filed a motion for oral argument. We retained the cause, deny the motion for oral argument, and hold that because the county commissioners neglected to follow the statutory publication requirements the voter-approved lodging tax increase is invalid. 
APPEAL PREVIOUSLY RETAINED;
MOTION FOR ORAL ARGUMENT DENIED;
TRIAL COURT REVERSED.
Lysbeth George, Jana L. Knott, Oklahoma City, Oklahoma, for Appellants.
David Floyd, Norman, Oklahoma, Mark Matloff, McCurtain County District Attorney, for Appellee, Idabel, Oklahoma, Bd. of Cty. Comm'rs.
J. Christopher Davis, Tulsa, Oklahoma, Harvey D. Ellis, Jr., Lauren E. Kiefner, for Intervenor/Appellee, Oklahoma City, Oklahoma, McCurtain Mem. Med. Mgmt., Inc.

KAUGER, J.:
¶1 We retained this cause to address whether the voter-approved lodging tax increase remains in effect when the statutory publication directives were not followed. We hold that it does not.

FACTS AND PROCEDURAL TIMELINE
¶2 In the fall of 2020, the defendant/appellee, the Board of County Commissioners for McCurtain County, Oklahoma (Board) sought a voter-approved lodging tax increase to raise funds for the McCurtain County Hospital. The ballot proposition language sought a lodging tax increase of two percent (2%) "in addition to all other lodging taxes levied."
[1] The existing lodging tax rate was three percent (3%).[2] The proposition was published four weeks in the McCurtain Gazette on October 8, 15, 22, and 29, 2020.[3] The special election failed with 56.52% of the voters voting against it.[4] 
¶3 Almost two year later, on August 15, 2022, the Board adopted a resolution authorizing and calling for another special election to vote on imposing a two percent (2%) "increase of the existing hotel/lodging tax within McCurtain County, Oklahoma," to raise funds for the McCurtain County Hospital.[5] The Board declared an emergency, and authorized and called for an election on the following proposition:

Shall the existing hotel/lodging tax within McCurtain County, Oklahoma be increased by two percent (2%), effective as of April 1, 2023, for a term of Thirty (30) Years from the effective date of the tax or at the date of final payment of any debt incurred related to the tax, whichever occurs earlier, two percent (2%) increased portion of the proceeds of said tax to be utilized for the designing, constructing, financing, furnishing, equipping and providing fixtures for the McCurtain Memorial Hospital, authorizing the pledging of the two (2%) tax increase for debt service on any financing, and continuing maintenance expenses related to the New McCurtain Memorial Hospital?
[6] 
The August 15, 2022, Board minutes also call for the "Election Proposition and Notice to be published as required by law." [7] 
¶4 Title 19 O.S. 2021 §§381-389, enacted in 1910, governs the procedures for county elections to be submitted to county voters. Title 19 O.S. 2021 §383 still provides:

The mode of submitting questions to the people contemplated by the last two sections shall be the following: The whole question, including the sum desired to be raised, the amount of tax desired to be authorized, the rate per annum, and the whole regulation, including the time of its taking effect or having operation, if it be of a nature which can be set forth, and the penalty of its violation if there be one, is to be published at least four (4) weeks in some newspaper published in the county. If there be no such newspaper, the publication is to be made by posting up in at least one of the most public places in each election precinct in the county; and in all cases the notices shall name the time when such question will be voted upon, and the form in which the question shall be taken, and a copy of the question submitted shall be posted up at each place of voting during the day of election. (emphasis supplied).
Title 19 O.S. 2021 §388 required specific words to be used in the ballot title, review by the district attorney, and publication pursuant to §383.[8] 
¶5 It is undisputed that the proposed proposition was not published for at least four weeks in any county newspaper.[9] The statutory provisions do not establish any procedure for challenging a proposed election in general, or provide any consequences if the publishing requirement is unmet. The District Attorney reviewed and certified the legal correctness of the measure.

¶6 Even though the statutorily prescribed publication did not occur, numerous other measures of informing the 16,791 McCurtain County registered voters were used
[10] such as:
1. Brian Whitfield (Whitfield), the Chief Executive Officer of the Hospital, published numerous posts between August and November of 2022, regarding the proposal on the Hospital's facebook page which had approximately 4,131 followers;
[11] 
2. Four billboards were installed in McCurtain County from September to November of 2022, calling for a "YES" vote on the 2% lodging tax increase to support the construction of the future Hospital;[12] 
3. Between September and November, 2022, at least one hundred seventy-three commercials aired on local radio regarding the measure;[13] 
4. Kendra Gross (Gross), the Director of Academic Affairs of Southeastern Oklahoma State University -- McCurtain County Campus and President of the Board of Trustees which managed the Hospital, authored a series of articles offering public insight to the proposition that was published in McCurtain County newspapers weekend editions on September 10-11, and 17-18, 2022, October 1-2, 8-9, and 15-16, 2022, and November 3, 5-6, 2022;[14] 
5. Gross spoke to the Lion's Club concerning the proposition on September 8, 2022,
[15] and on September 22, 2022, the County Commissioners hosted a public meeting where the full text of the proposition was presented;[16] 
6. Gross and Whitfield spoke to the McCurtain County Kiwanis Club on October 4, 2022, and the Rotary Club on October 5, 2022;[17] 
7. On October 24, 2022, and November 3, 2022, Gross spoke at two town hall meetings hosted by the hospital at the Southeastern Oklahoma State University Auditorium in Idabel[18] which was also livestreamed on the McCurtain County Community News Facebook Page which had approximately 11,600 followers;[19] 
8. Whitefield appeared on a television news station out of Shreveport, Louisiana, which covers McCurtain County news on October 25, 2022;
[20] 
9. Prior to the election Whitfield appeared on KBEL radio for a live interview where he discussed where the new hospital would be built, where the revenue to pay for it would come from, the tax increase, and the estimated cost to build and maintain the new hospital.[21] 
10. On November 6, 2022, the Southeast Times published the full text of the ballot proposition in its newspaper.[22] 
11. Approximately one week before the election, voters received a mailing encouraging them to vote against the proposition.[23] 
¶7 On November 8, 2022, McCurtain County conducted a Special Election alongside the General November Mid-term Election,
[24] where voters were presented with the proposition for a 2% lodging tax increase to finance and replace the outdated Hospital and with the tax increase effective April 1, 2023. Every precinct voted in favor of the proposal, with 65% of the voters approving it.[25] At the same time, McCurtain County residents approved Hochatown's incorporation as a municipality.[26] 
¶8 On February 1, 2023, the Oklahoma Tax Commission (OTC) published notice that the hotel/lodging tax rates would increase from 3% to 5%, effective April 1, 2023.
[27] On February 8, 2023, the Hospital filed a Petition for Declaratory Judgment, seeking the trial court's determination that the November 8, 2022, election was valid, and that the lodging tax increase was properly approved. On February 17, 2023, the OTC also sent notices to property owners in McCurtain County advising them of the change in tax rate.[28] 
¶9 The original plaintiff, Scott Senner, reserved a cabin from the plaintiff/appellant property owner, Vonderosa, (collectively, Vonderosa) located in Hochatown, in McCurtain County, Oklahoma, for April 4-6, 2023, a few days after the lodging tax increases were to become effective. On February 16, 2023, Vonderosa also filed a Petition for Declaratory Judgment and Permanent Injunction in the District Court of McCurtain County, Oklahoma. They sought a determination that: 1) the Lodging Tax passed at the Special November 8, 2022 election be declared void and unenforceable, and 2) the County be enjoined from enforcing the tax.

¶10 On February 23, 2023, the Hospital sought to intervene and consolidate with the Vonderosa lawsuit. The Board also filed a motion to consolidate the two cases. On March 3, 2023, the plaintiffs replaced Senner with another renter, plaintiff/appellant, Michael W. Cathey.
[29] The two causes were consolidated on March 8, 2023, and both parties filed motions for summary judgment.
¶11 On March 13, 2023, the trial court denied Vonderosa's request for a temporary injunction, and Vonderosa appealed, seeking emergency relief in this Court in Case No. 121,155. On March 28, 2023, this Court temporarily enjoined enforcement of the sales tax increase until the validity of the special election was fully and finally litigated. Before we issued the mandate in Case No. 121,155, the trial court, on June 20, 2023, granted summary judgment in favor of the Hospital. Vonderosa appealed the summary judgment ruling to this Court in case no. 121,465 on July 20, 2023.
¶12 While Case No. 121,465 was pending, we denied rehearing in Case No. 121,155 on June 26, 2023, and issued the mandate on September 13, 2023. This Court determined on November 14, 2023, in a published opinion in cause No. 121,465, Cathey v. Board of County Commissioners, 2023 OK 108, ___ P.3d ___, that the trial court was divested of jurisdiction to enter summary judgment until this Court issued the mandate in Case No. 121,155. We reversed and remanded the matter back to the trial court. Mandate issued in Case No. 121,465 on December 13, 2023.
¶13 On January 9, 2024, with all of the appeal mandates having been issued, the trial court entered a Renewed Journal Entry of Judgment on Cross-Motions for Summary Judgment, again granting summary judgment to the Hospital. On February 8, 2024, Vonderosa appealed, and filed a motion to retain which we granted on February 13, 2024. On February 28, 2024, the Board requested the Court to hold an oral argument because this cause concerns a public issue with immediate ramifications. The cause was assigned on February 29, 2024, for an opinion, with the request for oral argument pending. While we agree that this cause concerns a public issue, we also believe that an oral argument in this cause would be dupliciatous and unnecessary. Accordingly, we deny the request for oral argument.

BECAUSE THE COUNTY COMMISSIONERS NEGLECTED TO FOLLOW THE STATUTORY PUBLICATION REQUIREMENTS, THE VOTER-
APPROVED LODGING TAX INCREASE IS INVALID.
¶14 Vonderosa argues that the county commissioners neglected to follow the statutory publication requirements, constituting insufficient notice and requiring the voter-approved tax increase to be invalidated. The Board admits that it did not follow the publication requirements, but argues that the measures they did take provided more notice than a newspaper publication and served the same function of informing voters. The Board also contends that Vonderosa should not be allowed to challenge the election after it occurred. Vonderosa contends that if the statutory notice procedures are not followed, it should be allowed to bring an after-election challenge as it did in this cause. We review such challenges de novo.
¶15 Notice is elementary and fundamental in the law. It serves many functions, and in some cases, is a jurisdictional requirement to a court proceeding.
[30] Notice by publication, at least insofar as real estate sales are concerned, is intended to attract prospective purchasers,[31] but notice by publication of a special election is designed primarily to apprise voters that an election which affects their interests is to take place, of what the election concerns, and to allow voters to exercise their sovereign will.[32] In other words, it provides the voters with the details of an election, including, but not limited to, the date, location, and the issue(s) to be voted on.
¶16 Notice by publication ensures that even those who cannot be reached through direct communication through personal notices or mail, can become aware of the election and participate to exercise their right to vote. The effectiveness of notice by publication lies in its broad reach and ability to provide a reasonable opportunity for public awareness and involvement. This helps to uphold the principles of transparency and fairness in the electoral process.
¶17 Fundamental and essential to notice, in any context, is that it should apprise interested parties of what the notice concerns, convey the required information, and afford a reasonable time for those interested to participate.
[33] Walker v. Oak Cliff Volunteer Fire Protection District, 1990 OK 31, 807 P.2d 762, addressed the compliance requirements with statutory notice provisions for an election similar to the one in this cause. In Walker, Logan County held a special election to establish a fire protection district. Prior to the election, the county was statutorily required to publish notice for two weeks in a newspaper of general circulation within the proposed district.[34] The county made no attempt to comply with the statutorily required notice. Eighteen months after the election, contestants filed an action in the district court to have the election declared null and void.
¶18 Even though the statutorily mandated notice was not published in a newspaper, a few steps were taken to notify the public of the election, including publication of: an article about the election; advertisements for ballot bids; and Logan County Commission meeting minutes regarding the election. Fire department members also passed out flyers about the election, and the establishment of a fire district was discussed in a social calendar which called for attendance at a fund-raising dance.
¶19 The Walker Court stated that notice requirements for general elections may be relaxed because the public is presumed to know when they are held. However, special elections held without the statutorily prescribed notice should be voided. Why? Because newspaper articles, public comments, or similar publicity cannot substitute for what the Legislature mandated regarding notice, and special elections are not set on a date certain so voters may be unaware that an election is being held at all. Without notice, the electoral process fails and the right to vote is abridged if a person does not have prior notice of an election which will affect their interests.
¶20 Like this cause, the statutory election framework involved in Walker included no provisions for election contests -- either before or after the election.
[35] Walker held that if there is no statutory provision allowing an election contest involving civil or property rights rather than purely political rights, the controversy may proceed in equity. It also held that laches is not an appropriate defense to the challenge of an election to one who lacks notice of a right to proceed or bring a cause of action.
¶21 In Walker, supra, at ¶16, the Court acknowledged that the County Board did not follow a legal duty, and the contestants tried to challenge the election as soon as they became aware of the voter-approved tax levy by contacting officials to obtain relief, and to attempt a pro se action within six months of the election. Here, there is also no statutory procedure allowing a pre-election challenge to a special election and as Vonderosa's counsel noted at the June 14, 2023, hearing: "When you're talking about four weeks publication notice, you're talking about four weeks right before the election, so I think it would be difficult to realize that publication wasn't happening and file a lawsuit before an election happened."
[36] Here, Vonderosa brought the lawsuit just over three months after the election was held, one week after the OTC published the new tax rate, and almost two months before the new tax rate was to become effective. Accordingly, we agree with Vonderosa that the rationale of Walker, coupled with the absence of any express statutory process to challenge such an election, does not preclude their challenge in this cause.
¶22 However, to the extent Walker's rationale regarding strict compliance also controls the outcome of this cause, we hesitate for several reasons. First, Walker was a 5-4 decision, and the requirement of strict compliance with notice publication procedures for the special election was a sudden departure from a long line of earlier cases.
[37] Second, Walker involved a December 14, 1982, special election, but in this cause the special election was held in conjunction with the generally known, date certain, general election. The fact that the voters expressly had to be made aware of the special election date in Walker was significant.
¶23 Third, Walker occurred in 1982, a time when newspapers were heavily relied upon for notice as "the" means to reach people regarding elections. Newspapers also reached many more people than they do today, because newspaper subscriptions are significantly diminished.
[38] The internet, mass mailings, mass public signage, e-mail, and social media either did not exist, or certainly did not have the presence they have today.
¶24 In McCurtain County, the primary newspaper is the McCurtain Gazette.
[39] It has a circulation of only 6000, with no paid general subscription for either print or digital subscriptions.[40] The newspaper reaches less than 20% of the county population through its circulation.[41] Another news outlet that serves the County is the McCurtain County Community News, a public Facebook group created on April 29, 2021, which also provides community news for McCurtain County and has 19,186 members as of May 21, 2024.[42] While not every member may live in McCurtain County, if they did, it would cover about 62.58% of the County through its platform. Regardless, it would appear that notice through Facebook is likely equal to, or much more effective than the newspaper.
¶25 Finally, in Walker, supra, only 10% of the voters were estimated to have voted in the election indicating the lack of notice may have significantly impacted the voter's right to participate. Here, of the 16,791 registered voters in McCurtain County, 8,050 participated in the election. Nothing in this cause indicates that the voters' rights to participate in the election were inhibited by the lack of the statutorily required newspaper publication. 
¶26 We have also recognized that, despite the contention that there must be strict compliance with notice methods, the use of an alternative method did not render the notice defective if the substituted method performed the same function or served the same purpose as the authorized method. For example, in Osprey L.L.C., v. Kelly-Moore Paint Co. Inc., 1999 OK 50, ¶12, 194 P.2d 984, the lease renewal terms provided that all notices shall be in writing but may be delivered either personally or by mail. The purpose of notice in that instance was to ensure the delivery of the notice and to settle any dispute which might arise between the parties as to whether the notice was received.
¶27 In Osprey, faxing the notice performed the same function and same purposes as the authorized method. Consequently, we held the faxed notice was timely. The fax was acceptable when the delivery method was not exclusive of other methods, and the substituted method served the same purposes as those expressly provided in the lease. This cause does not concern contract renewal terms, but it does involve a substituted method different from what the statute provided.
¶28 The Supreme Court of Connecticut, in Arras v. Regional School District. No. 14, 319 Conn. 245, 125 A.3d 172 (2015) decided a case in which residents brought an action against a town and board of education, contending that the failure to publish warning of a referendum in a newspaper as statutorily required rendered the referendum null and void. Rather than publish a statutorily required "warning" of the measure, proponents engaged in methods such as new releases, newspaper articles, direct mailers to residents, publication on the town website, and even robocalls notifying people of the date, time, and voting place.
¶29 After noting that courts should exercise caution and restraint in deciding whether to overturn an election, the court required: 1) substantial violations of the governing statutes to have occurred; and 2) as a result of those violations, the reliability of election results must be seriously in doubt. The court considered several cases from other jurisdictions requiring strict compliance, but also recognized that those cases predated the advent of television, robocalling, mass public signage, mass mailing, the internet and e-mail. Because the challengers did not present any evidence that the election results would have been different had strict compliance occurred, the court did not invalidate the referendum.
¶30 Despite the persuasive rationale of the Connecticut Supreme Court, we adhere to our holding in Walker, supra, that the Okla. Const., art. 3, § 4 , vests the Oklahoma Legislature with the authority to prescribe the time and manner of holding all elections.
[43] The Legislature has mandated what constitutes adequate notice by publication.[44] The Legislature's use of the word 'shall' connotes a mandatory duty equivalent to a command.[45] The statute is not ambiguous. Here, the statutorily required notice was not given. Requiring anything less than strict compliance would result in judicial legislation. We do not sit as a council of revision, empowered to rewrite legislation when the statute is free from ambiguity. We do, however, encourage the legislature to consider re-visiting, and possibly updating publication requirements to be more compatible with today's methods of communication. 
CONCLUSION
¶31 Title 19 O.S. 2021 §§381-389, enacted in 1910, still governs the procedures for county elections to be submitted to county voters, and they require a proposed measure to be published at least four weeks in some newspaper in the county. It is undisputed that the proposed tax increase proposition was not published, but many other measures to inform the public were taken. Notice by publication provides the voters the details of an election, including, but not limited to, date, location and the issue(s) to be voted on. The Legislature has mandated what constitutes adequate notice by publication. Here, the statutorily required notice was not given. Anything less than strict compliance requires us to invalidate the election. We do, however, encourage the legislature to consider re-visiting, and possibly updating publication requirements to be more compatible with today's methods of communication. 

APPEAL PREVIOUSLY RETAINED;
MOTION FOR ORAL ARGUMENT DENIED;
TRIAL COURT REVERSED.
ALL JUSTICES CONCUR.

FOOTNOTES
[1] The proposition language from the 2020 ballot measure read as follows:
Shall a proposition of McCurtain County, Oklahoma, enacting a new McCurtain County lodging tax increase, effective April 1, 2021, of Two Percent (2%) in addition to all other lodging taxes levied by McCurtain County, Oklahoma, on gross receipts or gross proceeds derived from the service of furnishing rooms by hotel, apartment hotel, or motel and for the furnishing of any other facility for public lodging, except campsites, within McCurtain County; Oklahoma for a Thirty Year term; the proceeds of said tax to be utilized to provide funds for purchasing sites, erecting, constructing, altering, additions and to and enlargement of the McCurtain County Hospital, and acquiring fixtures and equipment and furnishings and providing for the ongoing maintenance and operations costs related thereto; authorizing the pledging of the lodging tax for debt service on any financing and costs of issuance on the McCurtain County Hospital, if applicable, be approved.
[2] Ex. 1, September 1, 2021, Rates and Codes for Sales, Use, and Lodging Tax, Oklahoma Tax Commission, February 16, 2023, Petition for Declaratory Judgment and Permanent Injunction.
[3] Ex. 2, February 16, 2023, Petition for Declaratory Judgment and Permanent Injunction.
[4] Ex. 3, McCurtain County Proposition No. 3, Election Results, February 16, 2023, Petition for Declaratory Judgment and Permanent Injunction.
[5] This time, the Hospital was referred to as the McCurtain Memorial Hospital instead of the McCurtain County Hospital, but it appears, they are one and the same. The resolution provided:
A resolution authorizing the call and holding of a special election on November 8, 2022, in McCurtain County, Oklahoma, submitting to the qualified electors of McCurtain County for their approval or rejection the question of imposing a two percent (2%) increase of the existing hotel/lodging tax within McCurtain County, Oklahoma, effective as of April 1, 2023, said increase to end thirty (30) years from the effective date of the tax or at the date of final payment of any debt incurred related thereto, whichever occurs earlier; the two percent (2%) increased proceeds of said to be utilized for the designing, constructing, financing, furnishing, equipping and providing fixtures for the McCurtain Memorial Hospital and for continuing maintenance expenses related to the McCurtain Memorial Hospital; fixing an effective date, authorizing the pledging of the tax for debt service on any financing; authorizing the taking of other actions related to the special election; and declaring an emergency.
[6] Ex. 4, August 15, 2022, Minutes and Resolution of Meeting Calling Special Election, February 16, 2023, Petition for Declaratory Judgment and Permanent Injunction.
[7] Ex. 4, August 15, 2022, Minutes and Resolution of Meeting Calling Special Election, February 16, 2023, Petition for Declaratory Judgment and Permanent Injunction. Section 4: APPROVAL OF ELECTION PROCLAMATION AND NOTICE provides:
The Election Proclamation and Notice of even date, a copy of which is on file with the County Clerk and which is incorporated herein by reference, calling said election is hereby approved in all aspects and the Chairman or Vice Chairman is hereby authorized to execute said Election Proclamation and Notice on behalf of the County, and the County Clerk or Deputy County Clerk is hereby authorized to attest and fix the seal of the County to said Election Proclamation and Notice, and to cause a copy of said Election Proclamation and Notice to be published as required by law, and a copy thereof delivered to the County Election Board.
[8] Title 19 O.S. 2021 §388 provides:
A. When a county of this state is authorized to submit a proposition for approval by the registered voters of the respective county, whether by special election or otherwise, that will require a ballot title, it shall be the duty, in addition to any other duties required by law, of the county commissioners submitting the measure to prepare and file one copy of the measure with the district attorney of the county.
B. The county commissioners submitting the measure shall also submit a suggested ballot title which shall be filed on a separate sheet of paper and shall not be deemed part of the petition. The suggested ballot title:
1. Shall not exceed two hundred words;
2. Shall explain in basic words, which can be easily found in dictionaries of general usage, the effect of the proposition;
3. Shall be written on the eighth-grade reading comprehension level;
4. Shall not contain any words which have a special meaning for a particular profession or trade not commonly known to the citizens of this state;
5. Shall not reflect partiality in its composition or contain any argument for or against the measure;
6. In tax-related propositions, the proposition shall detail all known direct and indirect increases and decreases affecting the tax code;
7. In tax-related propositions, the proposition shall use the word 'increase' when an increase in a tax may depend on the passage or failure of the proposition;
8. Shall contain language which clearly states that a 'yes' vote is a vote in favor of the proposition and a "no" vote is a vote against the proposition; and
9. Shall not contain language whereby a 'yes' vote is, in fact, a vote against the proposition and a 'no' vote is, in fact, a vote in favor of the proposition.
C. The district attorney of the county for which a measure has been proposed shall review the filing required by subsections A and B of this section for legal correctness. Within five (5) days, the district attorney shall notify, in writing, the county commissioners whether or not the proposed ballot title complies with applicable laws.

D. A proposition subject to the provisions of this section shall be published as provided in Section 383 of Title 19 of the Oklahoma Statutes.

[9] The District Court in McCurtain County held a hearing on Vonderosa's Motion for Temporary Injunction on March 8, 2023, wherein the Chairman of the Board testified the Board did not publish notice as required by statute. The Chairman testified he was not even aware of the statutory publication requirements at the time. Ex. 4, March 8, 2023, Hearing Transcript, pg. 14, line 16, May 11, 2023, Plaintiffs' Motion for Summary Judgment and Brief in Support.
[10] The Oklahoma Election Board Statistics by County as of November 1, 2022, Ex. 5, May 10, 2023, Amended Motion for Summary Judgment.
[11] Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[12] Aff. of Dave Smulyan (Owner/operator of KBEL AM/FM Radio, Idabel, Oklahoma, McCurtain County.), Ex. 15, and Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[13] Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[14] Aff. of Kendra Gross, Ex. 7, and Ex. 9 (Articles), May 10, 2023, Amended Motion for Summary Judgment.
[15] Aff. of Kendra Gross, Ex. 7, May 10, 2023, Amended Motion for Summary Judgment.
[16] Aff. of Kendra Gross, Ex. 7, May 10, 2023, Amended Motion for Summary Judgment.
[17] Aff. of Kendra Gross, Ex. 7, May 10, 2023, Amended Motion for Summary Judgment; Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[18] Aff. of Kendra Gross, Ex. 7, May 10, 2023, Amended Motion for Summary Judgment.
[19] Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[20] Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[21] Aff. of Brian Whitfield, Ex. 8, May 10, 2023, Amended Motion for Summary Judgment.
[22] Proposition, Ex. 17, Southeast Times Newspaper, May 10, 2023, Amended Motion for Summary Judgment.
[23] According to the Hospital's May 10, 2023, Amended Motion for Summary Judgment, prior to the election, certain Hochatown incorporators who publically opposed the lodging tax proposition mailed out nearly 8,000 mailers to residents of McCurtain County encouraging them to vote against the proposition. Mailers, Ex. 20, May 10, 2023, Amended Motion for Summary Judgment.
[24] The general election held at the same time presented candidates for Governor, United States Congress, State Legislators, County Offices and local initiatives.
[25] Exhibit 3, Election Results, and Exhibit 4, Precinct Map, May 10, 2023, Amended Motion for Summary Judgment and Brief in Support.
[26] On April 4, 2023, Hochatown, Oklahoma voters approved a town 4% lodging tax with 68 votes in favor and 16 against. Ex. 28, and Ex. 29, May 10, 2023, Amended Motion for Summary Judgment and Brief in Support.
[27] Ex. 24, February 1, 2023, Rates and Codes for Sales, Use and Lodging Tax, Oklahoma Tax Commission, May 10, 2023, Amended Motion for Summary Judgment and Brief in Support.
[28] Exhibit 25, February 17, 2023, Oklahoma Tax Commission, May 10, 2023, Amended Motion for Summary Judgment and Brief in Support.
[29] Exhibit 30, Reservation Conformation for Michael Cathey, May 4,7, 2023, May 10, 2023, Amended Motion for Summary Judgment.
[30] In Cate v. Archon Oil Co., 1985 OK 15, ¶10, 695 P.2d 1352, the Court determined that the then existing statutory notice procedures for notice by publication were inadequate when a property owner's name and address are reasonably ascertainable. Similarly, in DuLaney v. Okla. State Department of Health, 1993 OK 113, 868 P.2d 676, held that minimum standards of due process required personal notice to adjacent landowners affected by a cause of action in an administrative proceeding that could impact their legally protected interest. Although the facts of Cate and Dulaney make them distinguishable from this cause, the purpose notice serves is clearly illustrated in both cases.
[31] Cate v. Archon Oil Co., see note 30 supra, at ¶7.
[32] See, Walker v. Oak Cliff Volunteer Fire Prot. Dist., 1990 OK 31, 807 P.2d 762.
[33] See, Cate v. Archon Oil Co., note 30 supra, at ¶7 discussing the elementary and fundamental requirements of due process and notice in any court proceeding.
[34] Title 19 O.S. 2021 §901.3, similar to the version in affect in 1990, currently provides:
The county clerk shall cause notice of the election to be given by publication once a week for two (2) successive weeks in a newspaper of general circulation in the territory comprising the proposed district. Such notice shall state the time and place of holding the election and set forth the description of the boundaries of the proposed district and its general purpose and intention. Such notice shall require the electors to cast ballots which contain the words: 'Fire Protection District - Yes', and 'Fire Protection District - No', or words equivalent thereto. All persons resident of such proposed district, who are qualified electors in their respective precincts, shall be qualified to vote on such proposition.
[35] The Fire Protection Act, 19 O.S. 1981 §901.1 et seq. did not have any language within it regarding election challenges. Its did, however, provide that elections were to be held in accordance with the general election laws. The general election laws 26 O.S. 1981 §8-109 prescribed election contests in any election except those in which candidates were seeking office. This did not prevent this Court from allowing equity to intervene.
[36] Transcript, June 14, 2023, pg. 32, lines 1-10.
[37] The Court previously looked to whether there was a showing of actual notice or knowledge of an election and whether the failure to comply affected the result of the election. Substantial compliance gave way to strict compliance with the adoption of Walker v. Oak Cliff Volunteer Fire Protection District, 1990 OK 31, 807 P.2d 762. The previous cases include: Mayberry v. Gaddis, 1923 OK 78, ¶6, 213 P. 316 [Substantial compliance with statutory requirements was sufficient, provided there was no evidence that any elector was deprived of the opportunity to vote or that the election result would have been affected.]; Smith v. State, 1921 OK 387, ¶12, 203 P. 1046 [Lack of compliance with statutory requirements does not render a special election void if there is no evidence that electors lacked actual notice or knowledge of the election.]; Lowe v. Consol. Sch. Dist. No. 97, Blaine Cty., 1920 OK 279, ¶4, 91 P. 737 [A special election will not be declared void solely due to technical deficiencies in notice if there's no evidence that voters lacked actual notice and were thereby prevented from participating.]; Ratliff v. State, 1920 OK 273, ¶9, 191 P. 1038, [Failure to provide statutory notice of an election to voters can be excused if there is evidence that all voters had actual notice and participated in the election.]; North v. McMahan, 1910 OK 179, ¶23, 110 P. 1115 [Substantial compliance with statutory requirements is sufficient if deviation did not mislead voters.]; Haskell v. Reigel, 1910 OK 101, ¶9, 108 P. 367 [Statutory requirement for the Governor to issue the proclamation within ten days was directory rather than mandatory.]; McCarty v. Cain, 1910 OK 260, ¶4, 110 P. 653 [Lack of statutory compliance for notice in a special election does not invalidate the election if all electors had actual notice and participated.]; Town of Grove v. Haskell, 1909 OK 236, 104 P. 56 [After an election has occurred, statutory requirements will be treated as directory rather than mandatory for the purpose of determining the validity of the election, unless the non-compliance obstructed the ability of voters to freely cast their votes, prevented ascertainment of the actual result, or was an essential element stated in plain text by the statute.] City of Ardmore v. State, 1909 OK 257, ¶5, 104 P. 913, 916 [A failure to provide statutory notice of a special election does not invalidate the election if it did not prejudice voters.]. 
[38] See our discussion in Purcell v. Parker, 2020 OK 83, ¶¶20-21, 475 P.3d 834, regarding diminishing circulation of newspapers and the low chance that notice might actually reach interested parties. In Harry R. Carlile Trust v. Cotton Petroleum, 1986 OK 16, ¶13, 732 P.2d 438, the Court noted that publication notice is not reasonably calculated to provide actual notice and that it may be an inadequate method to utilize, especially when compared to such methods as personal service or mail.
[39] Title 25 O.S. 2021 §106 sets forth requirements of a newspaper publication to be considered valid, legal notice. It includes certain paid subscription requirements, paid second-class mail, and continuously and uninterrupted publication. The record is unclear as to whether any of the mentioned publications qualify under §106, nor did the trial court make such a determination. In the event there is not an approved publication within a county, publications in a neighboring county may be utilized, even though they would be directed at residents who are not even eligible to vote in the county's election.
[40] McCurtain Gazette is also referred to as McCurtain County Gazette News. We may take judicial notice of newspapers on our own initiative or if a party requests it. See, Indep. Sch. Dist. #52 of Oklahoma Cty. v. Hofmeister, 2020 OK 56, ¶¶19-22, 473 P.3d 475; 12 O.S. 2021 §2202. According to an affidavit of Dian Jordan, (presumably a resident of McCurtain County), she personally reviewed all publication of the county which included the McCurtain County Gazette, Southeast Times and Valliant Leader looking for the proposal for the entire month of October and the proposal was not published. Aff. of Dian Jordan, Exhibit 5, February 16, 2023, Plaintiffs' Motion for Temporary Injunction and Brief in Support and Request for Expedited Hearing. McCurtain Daily Gazette, https://www.mondotimes.com/1/world/us/36/5193/15498#
google_vignette, (accessed May 21, 2024). 
[41] As of July 1, 2023, McCurtain County had an estimated population of 30,660. QuickFacts - McCurtain County, Oklahoma, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/mccurtaincountyoklahoma/PST045222 (last visited May 21, 2024). McCurtain Gazette is a newspaper covering "local news, sports, business, politics and community events" with a circulation estimate of 6000. McCurtain Daily Gazette, Mondo Code LLC, https://www.mondotimes.com/1/world/us/36/5193/1549 (last visited on May 21, 2024). As of May 20, 2024, the McCurtain County Gazette had 3,422 likes and 3,416 followers on their unofficial Facebook page, which was created on October 17, 2010. https://facebook.com/pages/McCurtain-Gazette/16225904065366/ (Last visited May 21, 2024).
[42] Https://www.facebook.com/groups/382446214454 (Last visited May 21, 2024). Both the Gazette and the Facebook group have been active in delivering the news in regard to special elections.
[43] Okla. Const. art. 3, §4 provides:
The Legislature shall prescribe the time and manner of holding and conducting all elections, and enact such laws as may be necessary to detect and punish fraud in such elections. The Legislature may provide by law for the registration of electors throughout the state and, when it is so provided, no person shall vote at any election unless he shall have registered according to law.
[44] 19 O.S. 2021 §383, see page 5, supra.
[45] Walker v. Oak Cliff Volunteer Fire Prot. Dist., see note 37, at ¶10; Fuller v. Odom, 1987 OK 64, ¶6, 741 P.2d 449.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 64, 741 P.2d 449, 58 OBJ 2057, 
Fuller v. Odom
Discussed

 
1990 OK 31, 807 P.2d 762, 61 OBJ 841, 
Walker v. Oak Cliff Volunteer Fire Protection Dist.
Discussed at Length

 
1993 OK 113, 868 P.2d 676, 4 OBJ 2845, 
DuLaney v. Oklahoma State Dept. of Health
Discussed

 
1920 OK 273, 191 P. 1038, 79 Okla. 152, 
RATLIFF et al. v. STATE ex rel. WOODS.
Discussed

 
1920 OK 279, 191 P. 737, 79 Okla. 115, 
LOWE et al. v. CONSOLIDATED SCHOOL DIST. NO. 97 BLAINE COUNTY et al
Cited

 
1921 OK 387, 203 P. 1046, 84 Okla. 283, 
SMITH v. STATE ex rel. BARRY Co. Atty.
Discussed

 
1909 OK 236, 104 P. 56, 24 Okla. 707, 
TOWN OF GROVE v. HASKELL
Discussed

 
1909 OK 257, 104 P. 913, 24 Okla. 862, 
CITY OF ARDMORE v. STATE ex rel. BEST
Discussed

 
1910 OK 101, 108 P. 367, 26 Okla. 87, 
HASKELL v. REIGEL
Discussed

 
1910 OK 179, 110 P. 1115, 26 Okla. 502, 
NORTH v. MCMAHAN
Discussed

 
1910 OK 260, 110 P. 653, 27 Okla. 82, 
MCCARTY v. CAIN
Discussed

 
1923 OK 78, 213 P. 316, 88 Okla. 286, 
MAYBERRY v. GADDIS
Discussed

 
2020 OK 56, 473 P.3d 475, 
INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed

 
2020 OK 83, 475 P.3d 834, 
PURCELL v. PARKER
Discussed

 
2023 OK 108, 
CATHEY v. BOARD OF COUNTY COMMISSIONERS FOR MCCURTAIN COUNTY
Cited

 
1999 OK 50, 984 P.2d 194, 70 OBJ 1809, 
Osprey L.L.C. v. Kelly-Moore Paint Co.
Cited

 
1985 OK 15, 695 P.2d 1352, 
Cate v. Archon Oil Co., Inc.
Discussed

 
1986 OK 16, 732 P.2d 438, 57 OBJ 998, 
Harry R. Carlile Trust v. Cotton Petroleum Corp.
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2202, 
Judicial Notice of Adjudicative Facts
Cited

Title 19. Counties and County Officers

 
Cite
Name
Level

 
19 O.S. 388, 
Proposition to be Submitted for Approval by Registered Voters in County - Additional Duties of County Commissioners - Filing - Ballot Title - Review
Discussed

 
19 O.S. 383, 
Mode of Submitting Questions to People Contemplated by the Last Two Sections
Discussed at Length

 
19 O.S. 901.1, 
Board of County Commissioners - Fire Protection District
Cited

 
19 O.S. 901.3, 
Election - Notice
Cited

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 106, 
Legal Notice Publication By Newspaper
Cited

Title 26. Elections

 
Cite
Name
Level

 
26 O.S. 8-109, 
Time for Filing Contest
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA